**In re Deborah S. DUKES a/k/a Deborah S. Shytle a/k/a Deborah S. Koletti, Debtor.**

**Bankruptcy No. 96–51131–JDW.**

United States Bankruptcy Court, S.D. Georgia, Waycross Division.

Sept. 15, 1997.

William S. Orange, III, Brunswick, GA, for Debtor.

David W. Adams, Ellis, Painter, Ratterree & Bart, L.L.P., Savannah, GA, for Creditor.

Sylvia Ford Brown, Savannah, GA, Chapter 13 Trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Objection to Claim by Sylvia Ford Brown ("Trustee"). The claim in question was filed as a secured claim. Trustee objects to the status of the claim on the grounds that the claim is not entitled to secured treatment pursuant to 11 U.S.C. § 506. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(K). After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Nations Bank ("Creditor") financed a 1996 Chevrolet Camaro for Deborah S. Dukes ("Debtor"). After experiencing some engine problems, Debtor complained to Creditor that the car was a "lemon."[1] Creditor responded that it was not responsible for the malfunction of the car, and that her proper recourse was to take it back to the dealership where it was purchased. At about the same time, Debtor's husband was injured and unable to work. When the resulting reduction in the household income caused Debtor to fall behind on payments to Creditor, she chose not to take the Camaro into the dealership for fear that it would be repossessed.

Next, a most peculiar event occurred. Creditor, through an error on the part of one of its employees, canceled the lien on the title to the Camaro and sent it back to Debtor. Upon receipt of the title with the lien shown as satisfied, Debtor took the Camaro to another dealership and traded it for a 1994 Chevrolet Stepside pickup truck. A short time later, when no payments had been made on the account, Creditor began recovery actions against Debtor.

Debtor next filed this Chapter 13 case, proposing to treat Nations Bank as secured to the extent of $17,900, the fair market value of the pickup truck. Creditor is agreeable to this arrangement, even though a substantial portion of their $25,000 claim will be relegated to unsecured status. It appears that this reduction might have occurred in any event based on a hypothetical valuation

---

1. The term "lemon" has made the linguistic transition from an adjective of casual conversation to a legal term of art. "Lemon" laws have been "enacted in many states [to govern] the rights of purchasers of new and used motor vehicles which do not function properly and which have to repeatedly be returned to the dealer for repairs. Such laws give redress to purchasers and permit refund of purchase price after certain steps are taken and opportunity has been given dealer to correct defects." *Black's Law Dictionary* 901 (6th ed.1990). Georgia's "lemon" law is found in O.C.G.A. §§ 10–1–782 to 784. In addition, the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq., provides minimum level "lemon" law type protection to consumers (i.e. states can, as many have, provide more protection if desired).

of the Camaro before it was traded for pick-up truck.

Trustee objects to the proposed treatment of this claim, arguing that vehicle is unencumbered, notwithstanding the fact that it became so as a consequence of Creditor's error. Creditor responds that the Court should impose an equitable lien on the pickup truck in its favor so as to justify its proposed secured status in this case.

### Conclusions of Law

In Georgia, liens on vehicles are perfected by an application for certificate of title. *See* O.C.G.A. § 40-3-51. The holder of a judgment lien must register the lien on the certificate of title by making application "to the commissioner or his appropriate county tag agent within 90 days of the date of the creation of the security interest or lien." *Id.* The certificate of title obtained will indicate the applicant creditor's lienholder status. The purpose behind this requirement is to provide a consistent method of providing notice to purchasers and other potential secured creditors of the security interest in the vehicle. This is the exclusive means of perfecting a lien in a motor vehicle in Georgia. Nonetheless, a party may have a security interest in a vehicle without having perfected that interest on the certificate of title. Such a party's interest will be inferior to another creditor's perfected security interest.

In resisting the interests of unperfected lien creditors, a trustee in bankruptcy relies upon the so called "strong arm" powers set out in 11 U.S.C. § 544. Section 544(a)(1) gives the trustee the status of a hypothetical judgment lien creditor, thereby enabling the trustee to hold an interest superior to that of creditors who have not perfected their security interests.[2] In this case, in order for Trustee to succeed, section 544(a)(1) must be construed to hold that a trustee's hypothetical position includes the taking of the additional constructive step of registering the lien on the vehicle's certificate of title. As remote as this step might be from the process of obtaining and docketing a judicial lien, there is no reason to conclude that Trustee's hypothetical position cannot include the taking of that additional step. If it is available to be taken by a lien creditor under the law of this state, section 544(a)(1) mandates that the rights of the Trustee be premised on the assumption that the additional step was taken in this case. Since, through a clerical error, Creditor caused its security interest in the vehicle to become unperfected, section 544(a)(1) will allow Trustee to enjoy an interest in the vehicle superior to that of Creditor.

As an alternative to this analysis, Creditor urges the Court to impose an equitable lien in its favor in order to prevent what it considers an injustice. Equitable liens and constructive trusts are remedies which can be asserted by one who holds a beneficial interest in property which has been wrongfully transferred to another person. The Supreme Court of Georgia has held that these remedies are applicable not only where the wrongdoer is an express trustee or fiduciary, but also where " 'a person wrongfully transfers property in which another has a beneficial interest, whether legal or equitable, and receives other property in exchange therefor.' " *Pittman v. Pittman,* 196 Ga. 397, 408, 26 S.E.2d 764, 772 (1943) (quoting 3 *Scott on Trusts* § 507, at 2431).[3] The court explained further that " '[in] any such case the person whose property is wrongfully used in acquiring [other property] can reach the [other property] by a proceeding in equity, and he can enforce a constructive trust or an equitable lien.' " *Id.; see also Lee v. Lee,* 260 Ga. 356, 357, 392 S.E.2d 870, 872 (1990) ("[A] constructive trust may be imposed where property has been acquired by fraud, or where, though not acquired by fraud it is against equity that it should be retained by the person who holds it.").

---

**2.** According to O.C.G.A. § 11-9-301(1)(b), "an unperfected security interest is subordinate to the rights of ... a person who becomes a lien creditor before the security interest is perfected."

**3.** The Georgia Supreme Court does not specify the edition of the treatise from which it was quoting.

Here, in order for the Court to impose an equitable lien on the pickup truck, Creditor must satisfy the *Lee* requirements by showing that the property was either acquired by fraud or that it is "against equity that [the property] should be retained by [Debtor]." In trading in the Camaro for the pickup truck, Debtor did not engage in fraud. The title for the Camaro had mistakenly been returned to Debtor with the lien canceled. Debtor knew that the lien-free certificate of title was returned in error. While the action of trading in the Camaro to acquire the pickup truck might be characterized as misconduct, it does not amount to the kind of misrepresentation that can serve as a basis for a finding of fraud. According to O.C.G.A. § 23–2–52, "[m]isrepresentation of a material fact, made willfully to deceive or recklessly without knowledge and acted on by the opposite party or made innocently and mistakenly and acted on by the opposite party constitutes legal fraud." Debtor's conduct does not reflect any willful misrepresentation of a material fact with an intent to deceive. The "opposite party" here, the dealership which took the Camaro as a trade for the pickup truck, did not act on Debtor's representation to their detriment. Furthermore, had Debtor filed this case before the trading of the Camaro for the pickup truck, the same issue would have been presented because the rights of Trustee would have attached with equal force to the lien-free Camaro.

As for the requirement that it is "against equity" to refuse to impose an equitable lien on the vehicle, careful analysis is required. It is appealing to conclude that some remedy should be provided to relieve Creditor of the effects of the clerical error of releasing the lien on the title. However, to accept such a plea is to conclude that the implementation of section 544(a)(1) is somehow "against equity." Perhaps a state court, not restricted by the mandate of the Bankruptcy Code, could conjure up a wise, Solomonesque solution. But, in this Court, the Bankruptcy Code provides the rule which controls the outcome of this case.

It can be urged as a matter of moral philosophy that a discharge in bankruptcy is inequitable to a creditor. In that spirit, the avoidance of liens, the setting aside of exempt property and the recovery of preferences in bankruptcy are all "against equity." But the policies embodied in the Code reflect decisions which prefer certain equitable ideas above others. At the core of this policy is the notion that the most equitable system requires the establishment of rights for the Trustee, on behalf of all unsecured creditors, ahead of the rights of any one unsecured creditor. This policy is implemented by section 544(a)(1) through its creation of the trustee's hypothetical judicial lien holder status. While Creditor may feel that "the looms of the law have woven a fabric of injustice," [4] this policy underlying the Code is not open for debate in this forum. Instead, this case must be decided by examining the result on the assumption that this hypothetical status existed at the moment of filing this case.

While it might be appealing here to try to redress apparent injustice by evoking the Court's equitable powers, it must be remembered that such powers are only available where the remedy at law is inadequate.[5] As complicated as this compound hypothetical scenario might seem, there is no evidence offered or reason to conclude that this statutory scheme violates the objectives of equality of distribution of assets. In fact, on the contrary, the evocation of the bankruptcy remedy by the debtor triggers an equality of treatment among all creditors. The elevation of the position of passive unsecured creditors in this case to the same level as the diligent but unperfected lien creditor is sure to be viewed by the latter with dismay and a sense of inequity. Nonetheless, any effort to provide a remedy in response to such a creditor's disappointment would, as precedent, be hopelessly disruptive to a system which de-

---

4. *In re Kaufmann/In re Lindheim*, 245 N.Y. 423, 429, 157 N.E. 730, 732 (1927) (Cardozo, C.J.) ("A pardon may in some conditions be a warning as significant as a judgment of reversal that the looms of law have woven a fabric of injustice.")

5. "Equity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law." O.C.G.A. § 23–1–4.

pends on orderly and predictable distribution of assets as one of its principal virtues.

Thus, it appears that section 544(a)(1) supplies the necessary legal as well as equitable muscle to oust this unperfected lien. Debtor's plan proposes to treat Creditor as secured to the extent of the value of the pickup truck. The Court holds that this classification of Creditor's claim must be denied.

An order in accordance with this opinion will be entered on this date.

## ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that the Objection to Claim filed by Sylvia Ford Brown, Chapter 13 Trustee, is SUSTAINED; and it is hereby further

ORDERED that Debtor amend the Chapter 13 plan in accordance with the terms of this order; and it is hereby further

ORDERED that in the absence of such an amendment a hearing will be set to consider whether this Chapter 13 case will be converted to a case under Chapter 7 of the Bankruptcy Code.