**In re Jimmy L. POPE and Lois C. Pope, Debtor.**

**Bankruptcy No. 97–50179.**

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

Nov. 17, 1997.

Clyde W. Royals, Douglas, GA, for Debtors.

David M. Wolfson, Kitchens, Wolfson, & Associates, P.C., Valdosta, GA, for Creditor.

Sylvia Ford Brown, Savannah, GA, Chapter 13 Trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, Bankruptcy Judge.

This matter comes before the Court on Objections to Confirmation by BankAmerica Housing Services ("Creditor") and the Chapter 13 Trustee ("Trustee") on the grounds that the Chapter 13 plan as proposed by Jimmy L. Pope and Lois C. Pope ("Debtors") violates 11 U.S.C. § 1325(a)(3), (5) & (6). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtors entered into a contract to purchase a 1994 Peachstate mobile home from Creditor on May 20, 1994. At that time, Debtors made a cash down payment of $3,050.00 towards the purchase price of $30,008.60. According to the contract terms, the interest rate was 11%, and payments were to made in the amount of $283.30 per month for a period of 240 months. The final payment under the contract was to be made on June 20, 2014.

On February 13, 1997 Debtors filed this Chapter 13 case. The parties have stipulated to a valuation of $21,000.00 for the mobile home. As a result, Creditor holds a secured claim in that amount and an unsecured claim in the amount of $6,273.21. In addition, at the time of the filing of the petition, there was an arrearage in the amount of $284.60.

Debtors' plan proposes to "cram down" Creditor's claim by paying the $21,000 secured portion over the life of the plan. Debt-

ors' plan payments are $842 per month. If the Court were to confirm the plan as proposed, Debtors' plan payments would need to increase to $1,404. per month. In either event, Debtor proposes to pay unsecured creditors a ten percent dividend.

Creditor objects to this treatment of its claim arguing that the Court should not allow Debtors to modify its claim by paying merely the secured portion of this long term debt within a five-year plan. Instead, Creditor contends that its claim should be paid according to the terms of the original contract. In addition, the Chapter 13 Trustee objects to the plan on the grounds that Debtor should allocate any additional available disposable income to fund repayment of unsecured claims.

### Conclusions of Law

█] Debtors propose a plan to pay Creditor's secured claim over a five year term. Such a treatment is unusual because it would result in the accelerated repayment of a long term debt into a short term plan. Creditor and Trustee object to this treatment of the claim contending that it would be violative of section 1325(a)(3), (5) and (6). Section 1325(a)(3) states that in order for a plan to be confirmed it must be "proposed in good faith and not by any means prohibited by law." The Court concludes that the plan, as proposed, fails to meet this requirement. With this holding, it is unnecessary to address the alleged violations of section 1325(a)(5) and (6).

Determining whether a plan is proposed in good faith is not an exact science. The Bankruptcy Code does not provide a definition of the term. Likewise, the legislative history does not provide any specific guidance. *See Kitchens v. Georgia R.R. Bank and Trust (In re Kitchens),* 702 F.2d 885, 888 (11th Cir.1983). In an effort to provide some framework, the Eleventh Circuit Court of Appeals provided a nonexhaustive list of factors to consider. *See id.* at 888–89.

█] According to the Eleventh Circuit, one of the factors to be examined is "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13." *Id.* In light of the proposal to cram down the long term mobile home debt into a five year plan, the Court must question Debtors' motivation in filing this case and their sincerity in proposing to repay their debts in a Chapter 13 case.[1] It appears that the largest factor motivating Debtors to file for Chapter 13 relief is to reduce the purchase price of their mobile home. In the three years since it was purchased, the value of the mobile home has decreased by approximately $9,000. If the Court were to confirm Debtors' plan as proposed, it would allow them to utilize the bankruptcy system to reduce the price to be paid for the mobile home from the price determined by the purchase agreement to the amount of its current fair market value.

Chapter 13 provides a means for debtors with regular income to repay their debts. The proposal to cram down the mobile home debt contravenes this purpose by giving Debtors a windfall which is not necessary to solve their financial difficulties. Debtors could alleviate their financial problems by paying the debt as originally contracted in accordance with the provisions of section 1322(b)(5) which states the following:

---

1. It should be noted that a plan cannot modify the rights of the holder of a claim secured by real estate which is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). However, the question of whether or not a mobile home can be characterized as real estate may be a complex issue. In Georgia, a mobile home is initially considered a *motor vehicle for which ownership is established* through a certificate of title. O.C.G.A. § 40-3-20. However, this characterization may change once the mobile home is permanently affixed to a parcel of land. Georgia courts examine three factors in order to determine whether the mobile home is personalty or realty: (1) "the degree to which the object has become integrated with or attached to the land," (2) "the intention of the parties with regard to the status of the object," and (3) "whether there is unity of title between the personalty and the realty at the time the object allegedly became part of the land." *Walker v. Washington (In re Washington),* 837 F.2d 455, 456 (11th Cir.1988). Creditor has not argued or presented any evidence in support of the contention that the mobile home in question is real estate. Thus, section 1322(b)(2) has no bearing on the outcome of this Court's determination regarding the Objections to Confirmation.

[A] plan may ... provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5). This section provides an option for treatment of long term debt in a Chapter 13 plan. However, it is not mandatory that all long term debts be treated in this manner as indicated by the section's use of the language that "a plan *may* ... provide for [this treatment]." *Id.* (emphasis added). It appears, however, that the optional nature of this provision has more to do with the treatment of the arrearage than the possibility that the payment of the principal debt may be accelerated in the manner proposed by Debtors.

Even if section 1322(b)(5) impliedly condones alternative treatment of long term debts, any such treatment must still remain true to the spirit and purpose of the Code. *See United Steelworkers of America, AFL–CIO–CLC v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979) ("It is a 'familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.' "). There is no specific provision in the Code expressly permitting or preventing the proposed treatment of the mobile home debt. Section 1322(b)(5) permits Debtors to cure any prepetition arrearage and pay long term debt according to its original terms. In the absence of the "good faith" requirement, such a

provision might be approved as one not prohibited by the Code.

The Chapter 13 program effectively requires that debtors pay all their disposable income into a plan to repay creditors. *See* 11 U.S.C. § 1325(b). The issue in this case is not the amount to be paid by debtors into the plan. Instead, this case is about the nature of debts to be repaid from the pool of funds created by Debtors' payments. The Code draws an implied distinction between the proper treatment of "short term debt" and "long term debt." [2] The implication is that a plan should be used to fund "short term debt" and arrearages on "long term debt." Inclusion of long term debt into a Chapter 13 plan defeats the delicate balance struck by the Code between debt repayment for creditors and debt relief for debtors.

In addition, Debtors' plan is not proposed in good faith because it is unfair to the unsecured creditors. Debtors' current plan payments are $842 per month. In order to cram down Creditor's claim, the plan payments would have to increase to $1,404 per month. [3] Since Debtors propose funding at this level, it must be assumed that Debtors believe they can fund the increased plan payments. Aside from the issue of whether Debtors' plan to pay such additional funds is feasible, it would be unfair to deprive the unsecured creditors of the higher dividend such funds would yield, just to accommodate Debtors in their attempts to pay, in the aggregate, considerably less on the mobile home debt which, because of its substantial amount, is more properly satisfied as was originally agreed between the parties, according to a long term repayment schedule as provided for by section 1322(b)(5). [4]

---

**2.** The Code does not expressly define either "short term" or "long term" debt. The kind of debts described in section 1322(b)(5) are commonly referred to as "long term" debts as a matter of convenient terminology. The reference here to "short term" debts is intended solely to designate that class of debts which do not qualify for treatment under section 1322(b)(5).

**3.** Of this $562.00 increase, a $283.30 portion would come from the monthly contract payment which would be absorbed into the plan payment. Thus, the actual additional amount required by Debtors' plan is $278.70 per month.

**4.** Arguably, in a 60 month plan, there is a distinction between payments made during the first

36 months, when disposable income is required to be paid by section 1325(b)(1)(B), and the last 24 months, when payments by a debtor might be optional. It sometimes happens that debtors avoid the good faith objection when funding repayment of potentially objectionable items like cars for children, boats and motorcycles by proposing to extend plan payments from 36 to 60 months so that payment on claims secured by such items does not diminish the dividend received by unsecured creditors. In this case, the extra time is not sufficient to repay the secured claim of Creditor. If unsecured creditors were to receive the benefit of the extra payments of $278.70, *see supra* note 3, during the first 36 months of the plan, the equities might stack up

In a recent opinion, Judge Lamar W. Davis, Jr. of the United States Bankruptcy Court for the Southern District of Georgia ruled that it was not bad faith to cram down mobile home debt into a Chapter 13 plan to the detriment of the unsecured creditors. *See In re Brunner,* Ch. 13 Case No. 97–20054 (Bankr.S.D.Ga. July 3, 1997).[5] In *Brunner,* he distinguished his holding in a previous case, *In re Harris,* Ch. 13 Case No. 96–20116 (Bankr.S.D.Ga., September 3, 1996), where he found bad faith under similar circumstances. *See Brunner,* Ch. 13 Case No. 97–20054, slip. op. at 3–4. Judge Davis explained that, in the *Harris* case, the proposal to cram down long term mobile home debt was found to be in bad faith because "the *sole* rationale for the debtor's accelerating repayment of the obligation was to redirect money away from unsecured creditors and towards a secured creditor in order to benefit the debtors." *Id.* at 4 (emphasis in original). In *Brunner,* however, he held the provision to be in good faith because there was an additional motivation for the treatment, the fact that the collateral was worth substantially less than the amount of the secured claim. *Id.*

As much as it would be convenient to reconcile the decision in this case with *Harris* and *Brunner,* it is not possible. It appears that *Harris* was decided correctly in asserting that "good faith" was lacking where the debtors proposed to divert funds from unsecured creditors to accelerate payment of a long term debt under the Chapter 13 plan. That inequity was equally present in *Brunner* and should not have been legitimized by the fact that the debtor in *Brunner* received an added benefit in the form of the "write down" of the secured creditor's claim. The injustice in *Harris* and *Brunner* is equally present in this case. The advantage to Debtors in proposing the injustice does not redeem the evil of the inequity.

There is an additional problem with the approach in *Brunner* as a matter of statutory construction. Judge Davis permitted the *Brunner* plan to be modified partly because it was not explicitly prohibited by the Code. In other words, Judge Davis read the Code to require that the creditor's claim be bifurcated under section 506(a) and then paid in full under the plan like any other secured claim. Nothing proposed in the *Brunner* plan was expressly prohibited by the Code. Section 1322(b)(5) allows, but does not require, the debtor to pay long term debt in accordance with its terms, while curing any arrearage under the plan. No specifications are given as to whether such a long term debt is subject to bifurcation like other claims under section 506(a) or whether long term debt can be paid on a basis equal to short term debt. The coherent structure which would resolve this issue is lacking, resulting in a piecemeal analysis that does not reflect consistent policy or methodology.

The various provisions of the Bankruptcy Code work successfully together as long as the Bankruptcy Court remains faithful to the requirement of fairness and good faith in every case. The role of a Bankruptcy Court in considering a Chapter 13 plan should not be limited to policing "bad faith" where no specific provisions of the Code are violated. The *Brunner* plan was confirmed because Judge Davis decided that the plan "was not proposed in bad faith." Ch. 13 Case No. 97–20054, slip op. at 5. Such a conclusion does not equate with a finding of "good faith" as required by Section 1325(a)(3) or even the fairness which equity demands. Such analysis seems unnecessarily narrow and strict. If the Code provided a coherent structure within which to test all proposed scenarios, such a negative construction would be appropriate.[6] Instead, in considering Chapter 13

---

differently. In such a case, the problem of acceleration of long term debt into a short term plan would remain to be considered without the impediment of inequity as to unsecured creditors.

**5.** Judge Davis and I share the Savannah division case load. Judge Davis presides over the Brunswick division while I preside over cases in the Waycross division. The *Brunner* case arises in the Brunswick division.

**6.** In *In re Dukes,* 213 B.R. 202 (Bankr.S.D.Ga. 1997), this Court ruled that equity was not available to reform the legal consequences of a creditor's clerical error in releasing its security interest in a vehicle. As unfair as this may have seemed to the creditor, the result is specifically mandated by the Code. The Court is not always in a position to impose its subjective judgment as to what is fair to the parties in a case. On the

plans, the policy of the Code seems weighted towards a subjective review by the Bankruptcy Court to insure that fundamental fairness to all creditors is the ever present underpinning in each case. Seen in this light, the court must conclude that a plan which proposes to take money from unsecured creditors in order to fund accelerated payments to a secured creditor is not proposed in "good faith." That principle is firmly established by *Harris*. It should not fall victim to a mechanical combination of code sections, none of which separately prevent the result, but all of which, when assembled together, result in an undesirable and unfair result.

other hand, section 1325(a)(3) seems to compel the exercise of such judgment in deciding wheth-

In sum, Debtors' plan violates Bankruptcy Code section 1325(a)(3) in that it is not proposed in good faith. This conclusion is supported by the Court's conclusions that Debtors' motivations for seeking Chapter 13 relief are disharmonious with the spirit of the Bankruptcy Code and that Debtors' plan is unfair to the unsecured creditors.

er a Chapter 13 plan is proposed in "good faith."