**In re Patrick Michael WALSH and Dianne Scoggins Walsh, Debtors.**

**Bankruptcy No. 97–10996.**

United States Bankruptcy Court, M.D. Georgia, Albany Division.

May 22, 1998.

David P. Ward, Kelley & Lovett, P.C., Albany, GA, for Debtor.

Kristin Smith, Columbus, GA, Chapter 13 Trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the court for confirmation of the proposed Chapter 13

Plan of Patrick Michael Walsh and Dianne Scoggins Walsh ("Debtors"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

## Findings of Fact

Debtors filed for Chapter 13 relief on August 11, 1997. Debtors owe approximately $31,000 in secured debt, approximately $785 in priority tax claims and over $83,400 in general unsecured debt. The secured debt results from the purchase of two automobiles, a 1994 Ford Aerostar Van and a 1995 Chevrolet C1500 pickup truck. The priority tax claims are for 1996 taxes. The unsecured debt consists largely of credit card obligations.

At the confirmation hearing held on February 23, 1998, Debtor, Patrick Walsh testified that his financial difficulties arose as a result of bad financial management and borrowing money from credit cards to assist his children. Mr. Walsh also testified that the second vehicle is necessary so that his wife, Dianne Walsh, can drive grandchildren to and from school. In addition, Dianne Walsh uses the vehicle when she babysits the grandchildren, even though she is not compensated for providing these babysitting services. The grandchildren are not the legal dependents of Debtors. No satisfactory explanation was given as to why the parents of the grandchildren could not provide for the care of the children. While Patrick Walsh is employed, Dianne Walsh is not, and, therefore, the second automobile is not necessary as a means of transportation to and from work or for any other purpose essential to the household of Debtors. Further, it appears that the willingness of Patrick Walsh to assist regularly with the care of the grandchildren for the three year duration of this plan is a matter of preference rather than urgent family necessity.

Debtors' monthly net income as stated in Schedule I is $3,346. The plan proposes to pay $1,200 per month for a period of 36 months. The secured and priority claims are proposed to be paid in full while the unsecured creditors receive nothing.

## Conclusions of Law

In relevant part, Bankruptcy Code section 1325 states the following:

(b)(1) If the trustee or holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

A disposable income analysis shows that the second vehicle is not necessary "for the maintenance or support of the debtor or a dependent of the debtor" within the meaning of section 1325(b)(2)(A). It is not used to transport anyone to and from work or to provide any benefit essential to Debtors' household. Furthermore, although it is used for transportation of Debtors' grandchildren, they are not the legal dependents of Debtors, and the need for the transportation is not a result of any continuing, urgent family necessity.

Debtors argue that the Court is not authorized to analyze this case on a disposable income basis because there has been no objection to confirmation by the "trustee or the holder of an allowed unsecured claim" as directed by section 1325(b)(1). This phrase

has been interpreted to mean that, absent a proper objection, a court may not, sua sponte, examine any concerns as to whether a debtor has allocated all disposable income to plan payments. *See, e.g., Smith v. ITT Fin. Servs. (In re Smith)*, 100 B.R. 436, 439–40 (S.D.Ind.1989); *In re Davis*, 68 B.R. 205, 209–10 (Bankr.S.D.Ohio 1986).

This assertion ignores the reality of practice in the Middle District of Georgia. Debtors' argument suggests that Trustee's confirmation recommendation should be construed to mean that the Trustee has *not* required Debtors to dedicate all of their disposable income to the plan for a three-year period. In fact, the trustee in this district routinely requires debtors in all Chapter 13 cases to dedicate disposable income to plans for a period of 36 months. If any debtor were to refuse to comply with this requirement, the Trustee would oppose confirmation of the plan.

■ This requirement by the trustee is not initiated by the filing of a formal written objection to every plan. All of the participants in the confirmation process in this district understand that the trustee imposes this requirement. If the trustee is persuaded by examination of the debtor and consultation with the debtor's counsel that this requirement is satisfied, and if there are no other impediments to confirmation, the trustee will recommend confirmation of the plan to the court. Such a recommendation does not, however, propose to usurp the court's discretion to conclude that a debtor has not complied with section 1325(b)(1). The trustee's presentation instead is routinely interpreted as suggestion by the trustee that the disposable income requirement of section 1325(b)(1)(B) is satisfied.

It is not necessary for the trustee to both recommend confirmation and at the same time oppose confirmation in order to preserve to the court the discretion to determine whether the debtor has complied with the requirement for the dedication of disposable income to the plan. Confirmation is routinely denied in this court where it is determined by the court at the confirmation hearing that the debtor has not complied with the disposable income requirement.

■ In this connection, confusion seems to have developed in this district between the disposable income test of section 1325(b)(1) and the good faith test arising under section 1325(a)(3). When it comes to the issue of whether a plan has been proposed in good faith, a court is free to examine any concerns on its own initiative. *See, e.g., In re Davis*, 68 B.R. at 209. Some courts have held that, even in the absence of an objection by the trustee or a creditor, a court can consider disposable income issues in determining whether a plan is proposed in good faith. *See, e.g., In re Fulton*, 211 B.R. 247, 255 (Bankr.S.D.Ohio 1997). Here, even though neither the trustee nor any creditor has any pending objection to confirmation, the Court, sua sponte, has raised an inquiry as to whether Debtors have satisfied the disposable income requirement and as to whether the plan has been proposed in good faith. This interplay between the issue of disposable income and the issue of good faith seems to have caused some confusion.

■ When making section 1325(a)(3) determinations as to good faith, courts in the Eleventh Circuit utilize the totality of circumstances test outlined in *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983). In that case, the United States Court of Appeals for the Eleventh Circuit noted the following non-exclusive factors to consider:

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and his dependents;

(3) the amount of attorney's fees;

(4) the probable or expected duration of the debtor's Chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; and

(11) the burden which the plan's administration would place on the trustee.

(12) substantiality of the repayment to the unsecured creditors;

(13) the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7; and

(14) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court.

*Id.* at 888–89. The Court in this case has concerns regarding the substantiality of repayment to unsecured creditors, degree of effort, and motivations and sincerity in seeking Chapter 13 relief.

 Debtors' plan proposes to pay no dividend to unsecured creditors. This fact is unsettling considering that the bulk of the debt in this case is over $83,400 in unsecured credit card obligations incurred to provide financial aid to Debtors' children. Debtors argue that, in the wake of 1984 addition of the disposable income test of section 1325(b), substantiality of repayment to unsecured creditors should no longer be a factor considered in determinations as to good faith. While it is true that the *Kitchens* decision predates the 1984 changes to the Bankruptcy Code, this Court concludes that the substantiality of repayment to unsecured creditors factor is still a proper consideration in good faith determinations. In a post–1984 case, Judge Lamar W. Davis of the United States Bankruptcy Court of Southern District of Georgia stated the following:

> The passage of Section 1325(b)(1) does nothing, in my judgment, to alter the thrust of the Kitchens line of cases that this Court is charged with the duty of making a case-by-case inquiry to determine whether the proposed Chapter 13 plan meets the statutory criteria including "good faith".... On its face, the language does not require the court to confirm every plan, regardless of the facts, when the three years, disposable income test is met.... [T]o constitute a "good faith" proposal, under the controlling decisions, I believe it is still necessary to measure the result in dollar terms of the debtor's effort. In short, substantiality of repayment remains a relevant factor in deciding "good faith". [sic (as to placement of the period)]

*Matter of Hale,* 65 B.R. 893, 895–96 (Bankr. S.D.Ga.1986).

While it is clear from Judge Davis' reasoning in the *Hale* case that the *Kitchens* factor of substantiality of repayment is still an issue, there is confusion over the method by which to measure the substantiality of the repayment. Should substantiality be measured in terms of absolute dollars paid into a plan, or should substantiality be measured in terms of the benefit to unsecured creditors? Citing section 1325(b)(1), Debtors argue that a commitment of disposable income to the plan for a 36–month period is the maximum amount of payment that can be required as a condition of confirmation. In further support of that position, Debtors cite section 1322(d) which limits the duration of a debtor's plan to 36 months "unless the court, for cause, approves of a longer period" not to exceed five years. Lastly, Debtors cite authority for the proposition that the court cannot approve an extension of Debtors' plan payments for a period of more than 36 months, not to exceed 60 months, solely for the purpose of increasing the dividend to unsecured creditors. *See In re Greer,* 60 B.R. 547, 555 (Bankr.C.D.Cal.1986) (more substantial payment to unsecured creditors does not qualify as "cause" to extend a plan more than three years). As isolated propositions, each one of these assertions has merit. On the other hand, none of the items, considered individually or together in any combination, can have the effect of negating the disposable income and good faith requirements.

The circumstances of this case precisely illustrate the flaw in Debtors' reasoning. Starting with Debtors' income stated on Schedule I, items are deducted as stated on Schedule J. It appears that the income is

honestly and correctly stated on Debtors' Schedule I. Further, it appears that each of the items of expense stated on Schedule J are likewise honestly and correctly stated. By this analysis, Debtors argue that the disposable income amounts to $1,200. The next step in Debtors' analysis is to consider whether the plan is proposed in good faith. The plan proposes to pay secured and priority claims in full. After payment of these claims, there will be no funds remaining at the conclusion of the 36–month period to pay any dividend to unsecured creditors. Debtors argue, therefore, that all of the requirements for confirmation have been satisfied. Debtors' analysis progresses from disposable income, to good faith, and to confirmation. Since it appears that Schedules I and J are correctly stated, Debtors argue that disposable income analysis is satisfied. As for good faith, Debtors argue that no provision in the plan is forbidden by law. Debtors argue further that since the court cannot require them to extend payments into the plan for a period of longer than 36 months, confirmation is compelled by the Code.

The flaw in this analysis is the failure to look at the amount and purpose of disbursements to secured creditors as part of the disposable income analysis. Consider as an example a case where a luxury item such as a recreational vehicle appears among the list of secured creditors. In such a case, the trustee will insist that the debtor surrender the recreational vehicle and eliminate the payment to that creditor in order to increase the dividend to unsecured creditors. The foundation in law for this requirement is not questioned by debtors in this court. In some cases, debtors respond to this objection by proposing to increase the payments into the plan for a period of more than 36 months in an amount sufficient to pay the creditors claim secured by the luxury item.[1]

These arrangements represent a proper application of the disposable income analysis occurring outside the scope of the Schedule I and Schedule J. In other words, a debtor is not free to allocate the net amount determined by subtracting Schedule J from Schedule I to the payment of any secured claim he or she should choose. Instead, a debtor is limited to disbursements on secured claims which are "reasonably necessary to be expended for the maintenance and support of a debtor or a dependent of a debtor." 11 U.S.C. § 1325(b)(2)(A). This analysis is convenient when the collateral is something discreet like a recreational vehicle. The analysis becomes more complicated when the collateral is a relatively new car which has a life expectancy substantially exceeding the 36–month period of the debtor's plan. In this event, while the actual payment required to liquidate the secured claim may fully exhaust the plan payments within the 36–month term of the plan, the payment to the secured creditor may be more than a reasonable budget allocation for car expense for a debtor in his or her particular financial circumstances.

This presents an awkward problem at confirmation because the debtor is not conveniently able to reduce the payments to the secured creditor to the level of an amount which might be appropriate for car expense for a debtor in such circumstances. The unfortunate and incorrect conclusion is that there is no remedy for unsecured creditors. Believing it is not reasonable to require the debtor to surrender the car, and believing it is not possible to require the debtor to extend plan payments beyond 36 months, the trustee and creditors acquiesce to the debtor's plan. The result is a plan which permits a debtor to utilize funds which should be available to repay unsecured creditors to augment the amount which would reasonably be available in the debtor's budget to pay for the purchase of a vehicle. It is erroneous to construe these various provisions of the Code to come to this most inequitable conclusion.

There is nothing new or different about this analysis. The current edition of Collier on Bankruptcy explains as follows:

---

1. For example, if the luxury item were valued at $1,000, the debtor might propose to continue his plan payments of $100 per month for an additional 11 months, a total of 47 months, in order to retain this item. To pay $1,000, debtors will have to pay Trustee's commissions and interest on the secured claims for an estimated total of $1,100. Arrangements of this kind are routinely recommended by the trustee for confirmation by the court.

Some guidance may be obtained from other sections of the 1984 amendments. Most specifically, the amendment adding Code section 523(a)(2)(C)[citation omitted] defines "luxury goods for services" as "goods not reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor." [citation omitted] This definition and the vague reference in the legislative history to living levels, which tend to be concerned with average families, both suggest that the primary intent of the definition of disposable income is to prevent large expenditures by chapter 13 debtors on luxury goods and services which cause holders of unsecured claims to receive reduced payments.

Lawrence P. King, *Collier on Bankruptcy* ¶ 1325.08[4][b][ii], at 1325-52 to 1325-53 (15th ed.1998) (emphasis added).

The budget items which are considered as a part of the disposable income analysis include not only items which are stated on Schedule J such as private school expense and charitable donations, but the amount to be paid to secured creditors for the purchase of vehicles. If that amount is excessive in view of the other budget items, the debtor has not satisfied the disposable income analysis, even though the car payment is not separately stated on Schedule J.

The conclusion is to determine an appropriate amount for the payment of all of the debtor's expense items, including payments to secured creditors for vehicles as proposed by the debtor's plan. If it appears, for example, that $400 is a reasonable allocation for the payment of a vehicle, the debtor will not

be permitted to pay $500 to a secured creditor under the terms of a plan and eliminate or reduce the possibility for a dividend to unsecured creditors. If the debtor proposes to retain such a vehicle, he or she should propose to extend payments under the plan for a period of more than 36 months for a time sufficient to make up for $100 of disposable income diverted from unsecured creditors to make the $500 car payment for the first 36 months of the plan. Such a proposal would be no different from the case where the debtor might propose to extend the duration of plan payments to pay for a luxury item such as a recreational vehicle.[2]

In analyzing a case to determine whether confirmation is appropriate, the trustee should consider the reasonable budget amount to be paid for an item such as a car and require that any excess proposed to be paid by the debtor to a secured creditor be funded by an extension of the plan beyond 36 months. It is critical to note here that the Court is not requiring debtors to extend the duration of plans in order to fund a dividend to unsecured creditors. Instead, any such extension would be made, if at all, for the purpose of funding a payment which exceeds the reasonable amount which would be appropriate for that item in the budget of that debtor. While this is a subjective determination, it is no more subjective than the other determinations required by the Code in the disposable income analysis as to items such as food, clothing, private school tuition, charitable donations and utilities.

The purpose of this opinion is to discredit the practice which has arisen in this Court of

---

2. See footnote 1. For a comparable analysis, see *In re Pope*, 215 B.R. 92 (Bankr.S.D.Ga.1997). In that case the debtor proposed to cram down the fair market value of a mobile home rather than choosing to cure the default and maintain payments according to the terms of the contract where the last payment was due after the date on which the final payment under the plan was due pursuant to section 1322(b)(5). The debtor in that case argued a combination of code sections which, like this case, were correct as individual items but could not individually or together prevail over the disposable income and good faith requirements. In the *Pope* case, the result of the debtor's plan was to create an expense item for housing in the form of the payment of the mobile home debt which was substantially more than a

reasonable budget allocation for that item. In the *Pope* case, the plan proposed to extend payments for the maximum period of 60 months. Confirmation was denied in that case because the plan proposed to pay the excessive amount for the maximum period of 60 months. There was no option for the debtor to increase the period of the plan for a time sufficient to repay unsecured creditors the amount which would have been denied to them during the first 36 months of the plan by the accelerated payments to the mobile home lender. The plan in the *Pope* case was eventually confirmed after the debtor proposed a modification which withdrew the valuation and proposed to pay the mobile home debt in accordance with section 1322(b)(5).

accepting the amount determined by dividing the value of the vehicle over 36 months as a correct statement of the reasonable costs of a vehicle to such a debtor. The flaw in this analysis is apparent when applied to a late model luxury car. Yet this analysis, when applied to a more modest vehicle such as a Honda or Toyota, particularly when the vehicle is a relatively new model, may still result in an expense item for transportation which is excessive for a debtor in some circumstances.[3] The useful life of such a vehicle is likely to extend substantially beyond the 36–month life of the plan. In some cases, to pay for such a vehicle within a 36–month plan may unjustly deplete the debtor's ability to fund any repayment to unsecured creditors. Where a debtor does not propose to pay unsecured creditors the amount required by the disposable income analysis, the court will deny confirmation. The only remedy to a debtor who prefers to retain such property is to fund a plan for a duration in excess of 36 months sufficient to accomplish the payment of the dividend required by the 36–month disposable income analysis.

This conclusion does not retreat from the policy of the Bankruptcy Code that a debtor should be permitted to receive the benefit of a Chapter 13 discharge if he or she devotes all disposable income into plan payments for a period of 36 months. This notion of a 36–month best effort is still a cornerstone of the Chapter 13 program. This decision articulates the reasons why a debtor might voluntarily seek to extend payments beyond 36 months and why such a request might be approved by the court. A review of the cost of items to be retained by the debtor and funded by payment of the claims of secured creditors is very much a part of the disposable income analysis. The review of these items is no less appropriate simply because it does not take place within the context of Debtors' Schedule J.

The Court in this case is also troubled by Debtors' degree of effort and motivations and sincerity in seeking Chapter 13 relief. Debtors' three-year plan proposes no payments to unsecured creditors while funding the purchase of a second vehicle which is not necessary for an effective reorganization. The convenience of this second vehicle comes at the expense of the unsecured creditors. If Debtors propose to utilize Chapter 13 to pay for that nonessential vehicle, they should exert an effort in terms of a plan duration that is more than the minimum currently proposed. In the absence of such a proposal, confirmation must be denied.

In sum, the Court concludes that the plan does not satisfy the disposable income requirement of section 1325(b)(1)(B). Furthermore, the substantiality of repayment to unsecured creditors is insufficient, and Debtors' do not demonstrate the degree of effort and sincerity necessary in seeking Chapter 13 relief to satisfy the good faith requirement in accordance with the guidelines set forth in *Kitchens*. Accordingly, the Court holds that confirmation of Debtors' plan will be denied.

Debtors will be allowed a period of ten (10) days within which to file a modification of the plan to conform to the requirements for confirmation stated in this opinion.

An order in accordance with this opinion will be entered on this date.

---

**3.** It should be remembered that the 36–month rule was adopted in 1978. Since that date, automobiles have become much more expensive. Lenders have adapted to this reality by increasing the duration of their financing of new cars from a period that was once a maximum of 36 to 48 months to a period now which sometimes exceeds 60 months. Some argue that the increased cost of newer automobiles is offset by their increased reliability and durability. To some extent this may be reflected in the higher prices for these automobiles as used cars. The considerations for confirmation may be different now, in 1998, than they were in 1978. It is no longer safe to assume that the fair market value of an automobile divided over a period of 36 months will automatically equal a reasonable automobile expense item for every debtor.