**In re John L. CRUSSEN, Debtor.**

**No. 01–11136–TS.**

United States Bankruptcy Court,
W.D. Oklahoma.

July 17, 2001.

---

Elaine M. Dowling, Dowling & Dowling, Oklahoma City, Oklahoma, for debtor.

Linda Ruschenberg, Oklahoma City, Oklahoma, for trustee.

### *ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN*

JOHN TeSELLE, Chief Judge.

This case came before the Court for hearing on confirmation of Debtor's Chap-

ter 13 plan. Trustee objects to confirmation because Debtor is seeking to accelerate payment of the second mortgage on his home. Debtor proposes to pay an extra $650 per month toward the second mortgage on his home [1] and thereby pay the second mortgage in full in 36 months while paying only 44% of the amounts owed to unsecured creditors.

### Contentions of Debtor

In support of Debtor's proposed treatment of the second mortgage obligation, counsel for Debtor argues that the long-term debt provisions of § 1322 are permissive—a debtor may accelerate or de-accelerate a debt, and may choose to pay the debt in full. In support of her argument regarding de-acceleration, counsel relies upon *In re Thomas,* 115 B.R. 305 (Bankr. E.D.Okla.1990) and *Di Pierro v. Taddeo (In re Taddeo),* 685 F.2d 24 (2d Cir.1982). In *Thomas,* the bankruptcy court followed the Tenth Circuit Court of Appeals case of *In re Thompson,* 894 F.2d 1227 (10th Cir. 1990), which held that the " 'de-acceleration' treatment is an allowed curing of a default under 11 U.S.C. § 1322(b)(3) and not an impermissible modification of the rights of the holder of a secured claim on the debtor's principal residence, prohibited under 11 U.S.C. § 1322(b)(2)." In *Taddeo,* the court held that "the concept of 'cure' in § 1322(b)(5) contains the power to de-accelerate." Counsel cites *In re Chappell* for the proposition that "[t]he language of section 1322(b)(5) is discretionary. . . ." 984 F.2d 775, 780 (7th Cir.1993). She contends that *Pope* and *Chappell* do not prohibit a debtor from preferring a secured creditor over unsecured creditors so long as such is

done in good faith, and she represents the plan passes the traditional test for good faith set forth in *In re Dziedzic,* 9 B.R. 424 (Bankr.S.D.Tex.1981). Finally, counsel asserts that even if Debtor pre-pays his second mortgage there will be a distribution of approximately fifty percent to the unsecured creditors.

### Trustee's Objection

In opposing the proposed acceleration, Trustee argues as follows: first, that the pre-payment of the second mortgage is not reasonably necessary for the support of Debtor's family; second, that such pre-payment builds equity in the real property that benefits Debtor rather than the unsecured creditors; third, that so classifying the second mortgage is unfair; fourth, that the plan prefers Debtor over other creditors in the absence of special circumstances; and fifth, that Debtor is not sincerely making his best effort to pay his debts but rather wants to benefit himself through his plan.

In support of Trustee's objection, counsel relies upon *In re Bayless,* 264 B.R. 719 (Bankr.W.D.Okla.1999), *In re Pope,* 215 B.R. 92 (Bankr.S.D.Ga.1997), and *In re Ward,* 129 B.R. 664 (Bankr.W.D.Okla. 1991). In *Bayless,* the debtors proposed to continue contributing $712.50 per month into a 401(k) retirement plan and to devote $833.74 per month to fund fertility treatments while paying unsecured creditors only 35% over the course of 36 months. 264 B.R. at 720. This Court determined that the debtors' contributions to a voluntary retirement program and the funds allocated to fertility treatments constituted part of their disposable income that should have been devoted to the plan. *Id.* at 721. The Court further found that:

1. While Debtor's contractual payment on his second mortgage obligation is only $475 per month, his plan proposes to pay $1,125 per month toward this obligation.

The plan, as written, is for the statutorily prescribed minimum duration of three years and permits Debtors, who enjoy a substantial income, to walk away from over half of their unsecured obligations while saving for retirement and undergoing expensive fertility treatments. Debtors' plan appears to be an example of an attempt to manipulate and abuse the bankruptcy system in a manner that this Court will not permit. *Id.* at 721–22. After examining the facts of *Bayless* in light of the factors set forth in *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983), this Court concluded that the case should be dismissed because the debtors had not filed in good faith.

In the *Pope* case, the debtors proposed to accelerate payment of the long term debt owed on their mobile home and pay that obligation within the five-year term of the plan, while paying little or nothing to their unsecured creditors. 215 B.R. at 93–94. The creditor holding the claim on the mobile home obligation argued that the debtors should not be allowed to modify its claim, but should pay the claim according to the terms of the original contract. *Id.* at 93. The Chapter 13 Trustee argued that the debtors "should allocate any additional available disposable income to fund repayment of unsecured claims." *Id.* The *Pope* court considered the language in § 1322(b)(5) that appears to be permissive[2] and stated that "the optional nature of this provision has more to do with the

treatment of the arrearage than the possibility that the payment of the principal debt may be accelerated in the manner proposed by Debtors." *Id.* at 94. After thoroughly examining two unpublished opinions authored by a bankruptcy judge in the same district, that addressed this issue,[3] the court in the *Pope* case ruled that:

> The various provisions of the Bankruptcy Code work successfully together as long as the Bankruptcy Court remains faithful to the requirement of fairness and good faith in every case. The role of a Bankruptcy Court in considering a Chapter 13 plan should not be limited to policing "bad faith" where no specific provisions of the Code are violated.... Instead, in considering Chapter 13 plans, the policy of the Code seems weighted towards a subjective review by the Bankruptcy Court to insure that fundamental fairness to all creditors is the ever present underpinning in each case. Seen in this light, the court must conclude that a plan which proposes to take money from unsecured creditors in order to fund accelerated payments to a secured creditor is not proposed in "good faith."

*Id.* at 95–96.

### Relevant Facts

Debtor filed this voluntary Chapter 13 case on February 12, 2001. According to

---

**2.** Section 1322(b)(5) provides that:
   [A] plan may ... provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.
In its discussion, the court points out that while this section provides an option for treatment of long term debt in a Chapter 13 plan, the use of the phrase "a plan may ... provide

[such treatment]" means it is not mandatory that all long terms debts be so treated. *Id.* at 94.

**3.** Those cases were *In re Brunner,* Ch. 13 Case No. 97–20054 (Bankr.S.D.Ga. July 3, 1997) and *In re Harris,* Ch. 13 Case No. 96–20116 (Bankr.S.D.Ga. September 3, 1996), and were authored by Judge Lamar W. Davis who presides over the Brunswick division of the Southern District of Georgia.

Debtor's schedules, his monthly income is $7,753.85 and his monthly expenses total $3,940. His home, valued at $70,000, is encumbered by a first mortgage of $69,855 and a second mortgage of $32,855. Debtor owes $104,424.28 to fourteen creditors holding unsecured non-priority claims, *all* of which are attributable to credit card purchases.[4] Thus, the picture before the Court is one in which the Debtor has benefitted from numerous goods and services purchased with his credit cards, but now wishes to accelerate and pre-pay his second mortgage while paying these creditors less than fifty percent (50%) of what is owed them.

## Discussion

Based upon the facts of this case, the Court is of the opinion that Trustee's objections are meritorious. There is no evidence before the Court that the pre-payment of the second mortgage is reasonably necessary for the support of Debtor's family. Pre-payment of the second mortgage will indeed operate to benefit the Debtor rather than the unsecured creditors. On these facts, it is unfair to separately classify the second mortgage to facilitate such pre-payment, and there are no special circumstances warranting preferring Debtor over the unsecured creditors. Finally, Debtor is not sincerely making his best effort to pay his debts, but rather wants to benefit himself through the plan. This case is much like the *Bayless* case—the Debtor, who enjoys a substantial income, has proposed a plan for the statutorily prescribed minimum duration of 36 months which permits him to walk away from over half of the obligations owed fourteen credit card issuers while enjoying the benefits

inuring from wholly prepaying his second mortgage in only three years. If Debtor were to devote his disposable income toward paying his unsecured creditors instead of pre-paying his second mortgage, he would likely have no need for bankruptcy protection at all. Thus, as in *Bayless,* the Court finds this Debtor's plan also appears to be an example of an attempt to manipulate and abuse the bankruptcy system in a manner that this Court will not permit.

## Decision

Based upon the foregoing, confirmation of Debtor's proposed plan is denied. Debtor is granted ten days from the date of this Order in which to propose a plan that constitutes a good faith effort to pay his unsecured creditors as much as they would receive if the second mortgage were not accelerated. Should Debtor choose not to do so within the ten days, Trustee is directed to submit an Order dismissing this case.

---

4. Debtor's credit card obligations are as follows: MBNA America—$25,186, Bank of America—$14,950, Associates Capital Bank—$12,390, Household Finance Corp.—$11,960, American Express Centurion—$10,950, Wells Fargo Financial Bank—$7,177, Chase Gold— $5,997, Citibank Preferred—$5,995, Universal Card Services—$4,975, American Express— $3,864.03, Capital One Services—$485, MCCBG—$290, Swiss Colony—$131, and Conoco—$74.25.