**In re Johnny R. LILES, Paula R. Liles, Debtors.**

No. 01–32922–S.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Sept. 9, 2002.

Robert E. Barron, Nederland, TX, for Debtors.

## MEMORANDUM OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court is the Chapter 13 Plan filed by Johnny R. Liles and Paula R. Liles (the "Debtors"). This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr. Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

The Debtors filed a petition for relief under Chapter 13 of Title 11 together with the Plan now before the Court for consideration. At the confirmation hearing the Standing Chapter 13 Trustee objected to the confirmation of the plan on several grounds which were later resolved. The Trustee also alleged that the plan was proposed in bad faith. Specifically, the Chapter 13 Trustee objects to the proposed treatment of the Debtors' debt to the secured creditor, Greenpoint Credit.[1] No creditor, whether secured or unsecured, including Greenpoint Credit, objected or appeared at the confirmation hearing. The matter was taken under advisement by the Court following a hearing on the merits.

## DISCUSSION

The Standing Chapter 13 trustee objects because the Plan proposes to pay Greenpoint Credit $979.18 per month for 46 months effectively pre-paying the secured indebtedness over the life of the Plan. Under the original contract with

Greenpoint Credit, according to the testimony adduced at trial, the Debtors' required monthly payment is $408.00. The Debtors' argument that the payment is a form of adequate protection simply does not apply. Neither is the Court persuaded by Debtors' argument that such pre-payment is necessary to prevent Greenpoint from aggressive collection actions in the future if the Debtors ever fall behind on a payment. The Debtors allege that Greenpoint's prepetition aggressive telephone collection activities were the impetus to their filing for bankruptcy protection and that the goal of their bankruptcy filing is to "get them out of [the Debtors'] life". Greenpoint is alleged to have called three and four times a day, but only if the Debtors' monthly payment was late. The Debtors argue that accelerated payment is not an abuse of the spirit of the Bankruptcy Code here, where there is no allegation of malfeasance or hiding of assets. Finally, the Debtors believe that the instant facts are distinguishable from those of *In re Crussen*[2] and *In re Pope*,[3] the cases relied upon by the Chapter 13 Trustee, by the failure of any creditor to object to the proposed plan in this case. The Court disagrees: the Chapter 13 Trustee, as representative of the estate is charged with representing the interests of the unsecured creditors—therefore, creditors are not "silent" as the Debtors have opined. 11 U.S.C. § 1302. "[T]he primary purpose of the Chapter 13 trustee is not just to serve the interests of the unsecured creditors, but rather, to serve the interests of all creditors." *In re Andrews* 49 F.3d 1404, 1407 (9th Cir.1995) citing to *Matter of Maddox*, 15 F.3d 1347, 1355 (5th Cir.

---

1. Greenpoint Credit holds a claim secured by a lien on a mobile home that is Debtors' residence.

2. 264 B.R. 723 (Bkrtcy.W.D.Ok.2001)

3. 215 B.R. 92 (Bkrtcy.S.D.Ga.1997)

1994). The Fifth Circuit Court in *Maddox* examined the role of the Chapter 13 Trustee (in the context of a § 522 issue) concluding that "... in the great majority of chapter 13 cases, the trustee is asserting lien avoidance under § 522(f) to protect the interests of this original class of unsecured creditors". *Matter of Maddox, Ibid* at 1353. Although the issue before the Court is not avoidance of the lien, the rationale applies here, insofar as the Trustee's purpose is to prevent inequitable distribution of assets among classes of creditors.

Notwithstanding that the *In re Crussen* and *In re Pope* cases are not authority for this Court, this Court adopts the sound reasoning of those Courts applied to the issue of pre-payment of secured indebtedness under a plan at the expense of the unsecured creditors. The facts of the *In re Crussen* case mirror those before this Court. The Chapter 13 Debtor sought confirmation of a plan providing for accelerated payment of the Debtor's home mortgage and the Trustee objected on the grounds that "the prepayment of the second mortgage is not reasonably necessary for the support of Debtor's family; second, that such pre-payment builds equity in the real property that benefits Debtor rather than the unsecured creditors; third, that so classifying the second mortgage is unfair; fourth, that the plan prefers the Debtor over other creditors in the absence of special circumstances; and fifth, that Debtor is not sincerely making his best effort to pay his debts but rather wants to benefit himself through his plan." *Crussen, Ibid* at 724. All of the foregoing statements apply to the plan proposed by the Liles. This Court agrees with the *Crussen* Court's conclusion that a plan which proposes to take money from unsecured creditors in order to fund accelerated payments to a secured creditor is not proposed in "good faith." *Ibid* at 725.

Similarly, in *In re Pope, Supra,* the Popes proposed to accelerate payment of the long term debt owed on their mobile home and pay that obligation within the five-year term of the plan, while paying their unsecured creditors de minimis payments. 215 B.R. at 94–95. Both the Chapter 13 Trustee and the impaired secured creditor objected that the plan had been proposed in bad faith. The *Pope* Court noted that "[d]etermining whether a plan is proposed in good faith is not an exact science" and that neither the Bankruptcy Code nor legislative history define the terms. *In re Pope, Ibid* at 93 citing *to Kitchens v. Georgia R.R. Bank and Trust (In re Kitchens),* 702 F.2d 885, 888 (11th Cir.1983). The Pope Court determined that the "proposal to cram down the mobile home debt contravenes this purpose by giving Debtors a windfall which is not necessary to solve their financial difficulties" and characterized § 1325(b)(5) as an option for treatment aimed at treating arrearage. The Pope Court found the Popes' proposed plan was unfair to creditors and violative of the Bankruptcy Code; it denied confirmation.

■ The rationale for both the *Crussen* and the *Pope* courts' decisions strikes the correct chord for the case at bar:

> Even if section 1322(b)(5) impliedly condones alternative treatment of long term debts, any such treatment must still remain true to the spirit and purpose of the Code. *See United Steelworkers of America, AFL–CIO–CLC v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979) ("It is a 'familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.' ").

*In re Pope,* 215 B.R. 92, 94.

According to the Debtors' Schedules, introduced as Defendant's Exhibit "A", unse-

cured nonpriority debt was scheduled in the amount of $34,590.00 and unsecured priority debt was scheduled in the amount of $5,061.00. The Standing Chapter 13 Trustee argues that the Debtors' budget as reflected on Schedule J demonstrates $1,350.00 surplus monthly. Given said surplus (less the Trustee's fee), if the Debtors pay Greenpoint according to the terms of their contract over the life of the 36 month Plan, in excess of $30,500 in disposable income will be available to pay creditors other than Greenpoint Credit.[4] There is a difference of approximately $17,000.00 *less* available to pay to the aforementioned creditors under the Debtors' proposed plan. Thus, the Debtors are not prepaying their account with Greenpoint, rather their unsecured creditors are funding the accelerated pay off of this asset for these debtors. This the Court will not condone.

## CONCLUSION

This Court agrees with the reasoning of the *Crussen* and *Pope* courts and finds it apropos to the facts in the case at bar. However, the issue is not only one of good faith as the parties have defined it. It is also an issue of the treatment of classes of creditors. Certainly, one may divide creditors into classes and treat those classes differently. Most plans do so. The question is whether one may divide creditors into classes and then unfairly discriminate against a particular class as this plan proposes to do. Section 1322(b)(1) of the code prohibits unfair discrimination between classes of unsecured creditors. No specific

statute prohibits unfair discrimination between secured and unsecured creditors but this Court concludes that to do so is abhorrent to the spirit of the Code and to Congressional intent. For the foregoing reasons, confirmation must be denied. An order will be entered accordingly.

---

4. These numbers do not include amounts for duplicate entries on Schedules I and J which the Debtors amended the day of the trial. The surplus increases amounts available for creditors to $1,670. monthly. However, neither Schedule includes a reduction for the contractual payment of $408./00 to Greenpoint presumably because the Debtor's con-

template payment under the plan. The Court has proceeded from the Standing Chapter 13 Trustee's analysis of the unamended Schedule's figures in this Opinion because, although the amended schedules were filed of record the date of the trial, they were not admitted into evidence by either party.