### In re Robert L. TIBBS, Debtor.

### Bankruptcy No. 99–03782–TOM–13.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Dec. 8, 1999.

---

D. Sims Crawford, Birmingham, AL, for the Chapter 13 Trustee.

David S. Moyer, Birmingham, AL, for the debtor.

## MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Chief Judge.

This matter comes before the Court on the Chapter 13 Trustee's objection to confirmation and objection to exemptions.

Appearing at the October 28, 1999, hearing were David S. Moyer, attorney for the Debtor, and D. Sims Crawford, attorney with the Chapter 13 Trustee's Office. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994)[1] and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(L).[3] The Court has considered the pleadings, the arguments of counsel, the testimony, and the law and finds and concludes as follows.[4]

## FINDINGS OF FACT

■ Mr. Robert L. Tibbs (hereinafter "Debtor" or "Mr. Tibbs") filed for Chapter 13 bankruptcy on June 29, 1999. Mr. Tibbs has been employed as an assistant principal at Pleasant Grove High School for six years and has worked in the school system for twenty-six years. He is divorced and has two sons, ages 11 and 17.[5] Mr. Tibbs composition plan[6] provides that the Debtor repay his unsecured creditors 22% of the $109,191.50 unsecured credit card debt that he owes. (Schedule F).[7]

All of the Debtor's unsecured debts arose from numerous credit card purchases that the Debtor claims were incurred over a long period of time. Surprised at the amount of credit card debt, the Court specifically asked the Debtor to explain how the debt reached such an enormous sum. In response, the Debtor

1. 28 U.S.C. § 1334(b) provides:

   Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
   28 U.S.C. § 151 provides:
   In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or by order of the district court.
   28 U.S.C. § 157(a) provides:
   Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.

2. The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides: "The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act."

3. 28 U.S.C. § 157(b)(2)(L) provides:

   (b)(2)Core proceedings include, but are not limited to—
   (L) confirmations of plans[.]

4. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

5. Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir.1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir.1975).

6. A composition plan is a Chapter 13 plan providing for payment to unsecured creditors of less than 100% of their allowed claims. 5 *Norton Bankr.L. & Prac.2d* § 113:1, n. 2.

7. While a 22% composition plan may seem low, an examination of all of the Debtor's Schedules reveal that if Mr. Tibbs had filed his petition under Chapter 7, the value of the Debtor's estate after deducting his allowed exemptions would total $14,000 (Schedules B & C). After subtracting from this amount the $1,813.99 in secured debts, the unsecured creditors would receive $12,186.01 or 11% of their claims. This satisfies the standard under 11 U.S.C. § 1325(a)(4) because the Chapter 13 plan proposes to pay creditors more than they would receive under Chapter 7. *See infra* note 25.

candidly admitted that while some of the debt was due to gambling, most of it was due to his own financial mismanagement. The Debtor's lack of assets compared to the amount of unsecured debt supports his testimony.[8] Mr. Tibbs also explained that these excessive debts which were unknown to his wife played a large role in her decision to file for divorce.

The Chapter 13 Trustee (hereinafter "Trustee") filed an objection to confirmation of the Debtor's plan and an objection to the Debtor's claim of exemptions[9] on August 12, 1999. The Trustee asserted that the Debtor's plan could not be confirmed because the $471.07 per month proposed payment fails to include all of the Debtor's disposable income as required under the Bankruptcy Code for a composition plan. 11 U.S.C. § 1325(b)(1).[10] Particularly, the Trustee contended that although the Debtor currently has $225.82 per month automatically deducted from his paycheck for the Alabama State Teachers' Retirement System (hereinafter "Retirement System"), the amount deducted should be included as disposable income because retirement savings are not "rea-

sonably necessary" under § 1325(b)(2).[11] In addition to the retirement contributions, the Debtor claims to have $2,188 per month in expenses which will not be paid into the plan.[12]

The Trustee's objection to the claim of exemptions was based on the Debtor's exemption claim of $2,000 for clothing. The Trustee alleged that the claim was excessive. At trial, the Debtor testified that as a high school assistant principal he must wear "dress clothes" to work.[13] No other testimony was offered regarding apparel.

### CONCLUSIONS OF LAW

Under the Bankruptcy Code, if the trustee or an unsecured creditor objects to the Chapter 13 plan, the court may not confirm the plan unless it provides for either repayment of 100% of the debt owed to the unsecured creditors, or that all of the debtor's disposable income will be paid into the plan for at least three years. 11 U.S.C. § 1325(b)(1). In the present case, the Debtor does not propose to pay 100% of his unsecured debt, making subsection § 1325(b)(1)(A) inapplicable. Therefore, it is left with this Court to determine wheth-

---

8. The Debtor has few assets to show for his purchases. The Debtor lists no real property and his Schedule B lists $64,977.22 in personal property, however, $57,977.22 of that amount is attributed to the Retirement System ($45,977.22) and a 1994 Isuzu Rodeo ($12,000). This leaves approximately $7,000 in other personal assets.

9. Originally, the Trustee objected to two exemption claims but at the hearing only one objection was asserted and, thus, is the only one addressed herein.

10. 11 U.S.C. § 1325(b)(1) provides:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning

on the date that the first payment is due under the plan will be applied to make payments under the plan.

11. Mr. Tibbs testified that he has paid into the retirement fund for the entire twenty-six years that he has worked in the school system. Currently, the amount deducted is approximately 5% of the Debtor's gross income. Accordingly, since it is possible that the Debtor's salary might increase, his monthly contribution to the Retirement System could also be expected to increase.

12. The Debtor's Schedule J lists the following monthly expenses of $75 or more: $425 for rent, $75 for utilities, $350 for food, $200 for clothing, $100 for transportation, $125 for life insurance, $75 for auto insurance, and $653 for alimony, maintenance or support paid to others. The Debtor also includes a $25 recreation expense (which includes newspapers and magazines) and a $50 recreation expense for his minor children.

13. The Debtor's definition of dress clothes included ties, suits, dress slacks, etc.

er the Debtor has proposed to pay all of his disposable income into the plan. For these purposes, disposable income is income which the debtor receives but is not "reasonably necessary" to maintain or support the debtor or a dependent. 11 U.S.C. § 1325(b)(2).[14] The Chapter 13 Trustee claims that the Debtor's contributions to the Alabama Teachers' Retirement System should be included as part of the Debtor's disposable income.

█ The examination of disposable income that § 1325(b) requires will frequently result in a critical analysis of the debtor's way of life and/or standard of living.[15] Which expenses are "reasonably necessary" are questions of fact "which must be determined in the context of individual debtors and their dependents." *In re Easley*, 72 B.R. 948, 949 (Bankr.M.D.Tenn. 1987). *See also In re Smith*, 207 B.R. 888, 890 (9th Cir. BAP 1996) (ruling that a lower court's utilization of a "blanket rule" disallowing life insurance expenses was in error and stating that a case-by-case analysis is more appropriate). Bankruptcy Judge Keith Lundin instructs that determining what is reasonably necessary "will be a fact question determined in the context of individual debtors and their dependants." 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 5.36, at 5–101 (2d. ed.1994).

█ When examining disposable income, courts need not go so far as to require that the debtor lower his expenses to the poverty level. *In re Sitarz*, 150 B.R. 710, 718 (Bankr.D.Minn.1993). *See*

*also In re Otero*, 48 B.R. 704, 708 (Bankr. E.D.Va.1985) ("It is not in the public interest to squeeze the last dollar from Chapter 13 debtors to fund a Chapter 13 plan."); *In re Riegodedios*, 146 B.R. 691, 693 (Bankr.E.D.Va.1992) (" 'All disposable income' does not mean debtor's prison in a modern sense."). In fact, when examining disposable income a court "is not expected to, and should not, mandate dramatic changes in the debtor's lifestyle to fit some preconceived norm for chapter 13 debtors." *8 Collier on Bankruptcy* § 1325.08[4][b][ii], at 1325–54 (15th ed. rev. 1999). A court may, however, determine that some lifestyle changes may be necessary so that debtors are not "allowed to continue in the lifestyle that drove them to file bankruptcy and at the expense of their creditors." *In re Sutliff*, 79 B.R. 151, 157 (Bankr.N.D.N.Y.1987). *See In re Zaleski*, 216 B.R. 425, 431 (Bankr.D.N.D.1997) ("[C]ourts are loathe to favor kindly expenditures which are for luxury goods or to serve to perpetuate a luxury lifestyle.").

## I. Retirement Accounts

At the outset it is important to note that the cases which have addressed retirement accounts have usually characterized the accounts as either voluntary or involuntary. "Voluntary" has several definitions, but the most applicable here is "[d]one by design or intention." *Black's Law Dictionary 1569* (West, 7th ed.1999). Although never clearly defined, the cases all treat a voluntary retirement account as one to

---

**14.** 11 U.S.C. § 1325(b)(2) provides:

For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

**15.** "[A]n inquiry into a debtor's 'reasonably necessary' expenses is unavoidably a judgment of values and lifestyles and close questions emerge." *In re Sutliff*, 79 B.R. 151, 156 (Bankr.N.D.N.Y.1987). *See also In re Stones*, 157 B.R. 669, 670 (Bankr.S.D.Cal.1993) (stating that the Code's definition of disposable income in § 1325(b)(2)(A) is not very helpful, but implies that "the Court must look to the expenses to determine reasonableness").

which the debtor could cease making contributions at any time and face no adverse action (other than the loss of the retirement benefit). "Involuntary" is defined as not "resulting from a free and unrestrained choice; not subject to control by the will." *Black's Law Dictionary* 833 (West, 7th ed.1999). An involuntary retirement account is best viewed as an account into which a portion of the Debtor's wages are withheld and paid into as a regular contribution and the debtor cannot chose to cease making contributions without severe repercussions.

### (A) Voluntary Accounts

■ This Court agrees with existing case law which has consistently held that generally and in most cases voluntary contributions to a retirement or pension fund should be included as disposable income. *In re Cavanaugh,* 175 B.R. 369 (Bankr.D.Idaho 1994) (contributions to a 401K plan must be included in disposable); *In re Feldmann,* 220 B.R. 138 (Bankr. N.D.Ga.1998) (same); *In re Fountain,* 142 B.R. 135 (Bankr.E.D.Va.1992) (contributions to pension fund must be included in disposable income); *In re Festner,* 54 B.R. 532 (Bankr.E.D.N.C.1985) (voluntary retirement benefits must be included in disposable income); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 5.36, at 5–107 (2d. ed.1994) (individual retirement accounts and investments are not reasonably necessary for the maintenance or support of the debtor); Robert G. Drummond,

*Disposable Income Requirements under Chapter 13 of the Bankruptcy Code,* 57 Mont.L.Rev. 423, 448 (1996) (retirement accounts which do not assist the debtor with present day living expenses are not reasonably necessary). Several cases have also used similar reasoning to hold that a debtor making loan repayments to a retirement account must include the repayment in disposable income. *In re Harshbarger,* 66 F.3d 775 (6th Cir.1995) (repayment to ERISA qualified account); *In re Jaiyesimi,* 236 B.R. 145 (Bankr. S.D.N.Y.1999) (pension loan repayments); *In re Delnero,* 191 B.R. 539 (Bankr. N.D.N.Y.1996) (retirement account loan repayments); *In re Ward,* 129 B.R. 664 (Bankr.W.D.Okl.1991) (contributions to a savings account). As the *Festner* court remarked, a debtor is not entitled to investments which enhance his financial stability "at the expense of unpaid creditors." 54 B.R. at 533.

### (B) Involuntary Accounts

■ The issue of whether involuntary contributions to a retirement account should be considered disposable income under § 1325(b) is one of first impression for this Court and an area with very little case law. This Court knows of one case which has held that involuntary contributions should be included in disposable income [16] and one case which reached the opposite conclusion.[17] Most of the other

---

**16.** *In re Nation,* 236 B.R. 150 (Bankr.S.D.N.Y. 1999). The *Nation* court was faced with a debtor who was a member of the New York City employees' Retirement System. The court ruled that under the Supremacy Clause, 11 U.S.C. § 1325 preempted the New York law creating the pension fund. 236 B.R. at 155. However, this case may be distinguished from *Nation* because the *Nation* court did not find that the pension deduction was mandatory "in any material, consequential sense." *Id.* at 153. The court stated that "[i]f these contributions were halted, the debtor would not lose her job." *Id.* at 153, n. 4. As discussed *infra,* the facts in this case convince the Court that the Debtor would lose his job if the contributions were halted and, thus the

deductions are mandatory in a very material, consequential sense.

**17.** *In re Colon Vazquez and Mejias,* 111 B.R. 19 (Bankr.D.P.R.1990). In a very short opinion on similar facts to the instant case, the court held that the co-debtor, a public school teacher for the Commonwealth of Puerto Rico was subject to a deduction of 3% of her wages under Puerto Rican law which would go to a savings and loan account. 111 B.R. at 19. The Court found that the payroll deduction was not disposable income because it was "akin to an expense necessarily expended if [the co-debtor] is going to continue to be engaged in her normal business venture of being a teacher." *Id.* at 20. However, unlike the Alabama statute, the statute in *Colon*

cases have not been on point because they relate to either the repayment of a retirement account loan [18] or a pure voluntary contribution.[19] While not addressing the subject specifically, several courts have suggested that involuntary retirement contributions should not be included when calculating disposable income. *In re Jaiyesimi,* 236 B.R. 145, 149 (Bankr.S.D.N.Y. 1999) (noting the strength of the argument that mandatory contributions should not be included, but concluding that the debtors would not be forced to resign, and therefore, the contributions were not mandatory); *In re Cavanaugh,* 175 B.R. 369, 373 (Bankr.D.Idaho 1994) ("On the other hand, mandatory contributions to retirement plans are not considered disposable income."). However, § 1325(b) does not excuse those expenses which are merely involuntary. Therefore, even an "involuntary" expense must be considered in light of each debtor's unique circumstances to determine whether it is reasonably necessary. If a retirement contribution is truly involuntary, the court must then examine what consequences would result from the debtor losing his job.[20] In determining whether the involuntary contribution is reasonably necessary in light of the circumstances, the Court will examine and balance several factors. These include: (1) whether the debtor is seeking to shelter income through the retirement contributions; (2) the debtor's ability to find similar or better employment elsewhere;

(3) the harm to creditors if the contributions are excluded from disposable income; (4) the type of unsecured debt to be paid; (5) the purpose or reason for which the debt was originally incurred; (6) other reasonably necessary expenses of the debtor; and (7) the types of assets the debtor owns and/or for which he is paying.

### (C) Debtor's Contributions to the Alabama Teacher Retirement System

In the instant case, it is clear that the Debtor's contributions to the Retirement System are involuntary. The Alabama statute authorizing the state Retirement System provides: "The membership of the retirement system shall consist of the following: All persons who shall become teachers after the date of establishment **shall** become members of the retirement system **as a condition of their employment.**" Ala.Code § 16–25–3 (1995) (emphasis added).[21] From this statute and the testimony provided to the Court, this Court finds that the Debtor would not be able to keep his current employment if he was not part of the Retirement System.[22] The statutory requirement does not leave the employee any freedom as to whether he/she may or may not be a part of the Retirement System. Even though the retirement contribution is for the Debtor's own benefit, the Debtor does not have the power to decline participation, keep the

---

*Vazquez* was not a pure retirement fund. The Puerto Rican statute established a fund that would make loans, establish insurance plans, etc. 3 L.P.R.A. § 862b.

**18.** *See e.g. In re Harshbarger,* 66 F.3d 775 (6th Cir.1995) (repayment to ERISA qualified account); *In re Jaiyesimi,* 236 B.R. 145 (Bankr. S.D.N.Y.1999) (pension loan repayments).

**19.** *See e.g. In re Cavanaugh,* 175 B.R. 369 (Bankr.D.Idaho 1994) (voluntary contribution to a 401K plan); *In re Feldmann,* 220 B.R. 138 (Bankr.N.D.Ga.1998) (same).

**20.** Although a ruling in favor of the Trustee to include the retirement contributions as dis-

posable income would not terminate the Debtor's employment per se, the Debtor's plan would no longer be feasible because the Debtor would not be able to pay the amount required to the Trustee. Therefore, he would have to resign his job and look for other employment, dismiss his case, or convert his case to a Chapter 7 bankruptcy.

**21.** According to the preceding statute section, the date of establishment was October 1, 1940. Ala.Code § 16–25–2 (1995).

**22.** No evidence was presented to the Court to contradict the Debtor's testimony and a plain reading of the Alabama statute.

money, and invest it in whatever manner he wishes. It is, therefore, the finding of this Court that under Alabama law the monthly deduction from the Debtor's paycheck is a mandatory condition of the Debtor's employment and not a voluntary contribution. Having decided that the contributions are involuntary, the Court must now examine the seven factors mentioned earlier to determine whether the Debtor's involuntary contributions to the Retirement System should be part of his disposable income.

(1) *Whether the debtor is seeking to shelter income through the retirement contributions.* There is no evidence in this case that Mr. Tibbs' employment in the public school system is an attempt to shelter money from creditors. He has been employed as a public school teacher for twenty-six years and has been making the contributions to the Retirement System during that time. Although the contributions that the Debtor is making to the Retirement System will benefit him when he decides to retire, it does not seem to be his motivation for either seeking the employment twenty-six years ago, nor does it seem to be his motivation for either filing the bankruptcy petition or for the proposed plan payments and distribution to creditors. Additionally, the Court must take into consideration the fact that he has filed a Chapter 13 case proposing some distribution or payments to creditors as opposed to filing a Chapter 7 case and making no voluntary payments to his unsecured creditors.

(2) *The debtor's ability to find similar or better employment elsewhere.* The statute and uncontroverted testimony establish that so long as the Debtor is employed by the public school system, the retirement contribution will be deducted from his paycheck. If the retirement contributions are included as part of the Debtor's disposable income, the Debtor will be faced with two choices. The Debtor may chose to (1) keep his current job in which case the deductions from his paycheck will leave him with insufficient income to fund the Chapter 13 plan as proposed or he will have to drastically cut his already reasonable expenses to attempt to pay the plan.[23] Conversely, the Debtor may chose to (2) quit his job. Although the Debtor testified that it was possible for him to find other employment, no details were given as to the specifics of the other employment. Alabama law would preclude him from obtaining virtually any Alabama state educational employment.[24] Under these conditions, the court must look at what effect these circumstances might have on the Debtor's income or the case in general.

If Mr. Tibbs could not make the required contributions to the Retirement System, he would either need to obtain employment with a private school or leave his twenty-six year career in education. This Court sees many debtors for whom obtaining and retaining employment is an arduous and time-consuming task which is often unsuccessful and results in the dismissal or conversion of their Chapter 13 case. Based on the facts presented, this Court does not believe that it would be in the best interest of the Debtor, his children, his ex-wife, or his creditors to issue a ruling which would result in the Debtor joining the ranks of the unemployed for an

---

**23.** For analysis of other expenses, see discussion *infra* pp. 520–21.

**24.** For the purposes of the Retirement System a teacher is:

> Any teacher, principal, superintendent, supervisor, college professor, administrative officer, or clerk employed in any public school or public college within the state or employed in any private nondenominational school operated nonprofit for the education of children of school age residing within a district where no public school is available for the children or any similar employee or officer of the Department of Education or of the Alabama Education Association, or any attendance worker 50 percent or more of whose salary is paid from public school funds or any employee receiving a regular stated compensation from the retirement system.

Ala.Code § 16–25–1 (1998).

undetermined period of time. Even if the Debtor could obtain employment outside the public school system, this Court cannot conclude that the Debtor's financial situation would either improve or even stay the same.

(3) *The harm to creditors if the contributions are excluded from disposable income.* If the retirement contributions were included in disposable income and the Debtor chose to continue with his Chapter 13 case and the contributions were to be included in disposable income, it is entirely possible that the Debtor would leave the public education system and his twenty-six years of service behind only to accept a reduced salary and, thus, have less disposable income with which to pay creditors than his current salary. This outcome would amount to little more than chastising the Debtor by diminishing his retirement savings. However, while the Debtor would certainly be harmed, it is not clear that anyone would benefit from those circumstances.

Under those circumstances, the creditors might not receive even the same amount of money than if the current proposal was confirmed. In fact, the creditors could be in a much worse position. If the Debtor chose not to continue with his Chapter 13 case in order to keep his current job and converted it to a Chapter 7 action, the unsecured creditors would only be able to collect approximately one-half of what the Debtor current plan proposes. Therefore in this case, it appears that the creditors would probably be harmed more than helped by including the retirement contributions in disposable income.

Pursuant to 11 U.S.C. § 1325(a)(4), a Chapter 13 plan must propose that the unsecured creditors receive at least as much as they would if the debtor filed under Chapter 7.[25] That is certainly true in this case. Simple math shows that if the Debtor's plan is successful, his unsecured creditors will receive $24,022.13 (22% of $109,191.50). Assuming, arguendo, that the value of the Debtor's five year old Isuzu Rodeo is indeed $12,000, the unsecured creditors would only receive approximately $12,186.01 in Chapter 7. *See supra* note 7. Therefore, proceeding with the current plan is far more desirable than forcing the Debtor into Chapter 7.

(4) *The type of unsecured debt to be paid.* The Debtor's unsecured debt is all debt from credit card purchases. However, because these debts were accumulated over a long period of time, it is unclear how much of the debt is from the cost of the original purchase and how much may be attributed to interest. There is no unique or special public policy for encouraging the repayment of credit card debt. Unlike student loans, child support, or alimony, etc. the Bankruptcy Code has not singled out credit card companies for preferential treatment and accordingly, in the instant case, the type of debt is not a factor in deciding whether or not to include the Debtor's retirement contributions in his disposable income.[26] On the other hand, had the debtor used his credit cards for fraudulent purposes or had there been evidence that they were used to purchase luxurious items, this might be a factor against this Debtor. However, here the Debtor testified that they were more or less used to maintain a lifestyle that

---

**25.** 11 U.S.C. § 1325(a)(4):
  (a) Except as provided in subsection (b), the court shall confirm a plan if—
    (4) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

**26.** *See e.g. In re Roe,* 226 B.R. 258, 268 (Bankr.N.D.Ala.1998) (noting that Congress specifically chose to exempt certain education loans from discharge); *Forsdick v. Turgeon,* 812 F.2d 801, 802 (2nd Cir.1987) ("By virtue of § 523(a)(5), Congress has chosen between two competing interests—those of bankrupts and those of their former spouses and offspring—and it chose in favor of the latter.").

was perhaps nicer than salaries permitted, although not necessarily lavish.

(5) *The purpose or reason for which the debt was originally incurred.* In the instant case, because the credit card debts accumulated over a long period of time and the Court has no detailed evidence of what purchases the Debtor made, it can only assume that the purposes and reasons probably vary. However, this factor could be more applicable in other cases if, for example, the debts had been for emergency medical treatment, medical treatment without insurance coverage, or other similar reasons, this Court would be inclined to find that any repayment effort by the Debtor had merit. While some charges in the instant case may have been wasted on gambling and similar expenses, some of the expense could have been for groceries or clothing for the Debtor's children. Without any specific testimony regarding these expenses, this factor does not weigh either in favor or in opposition to the Trustee's motion.

■ (6) *The other reasonably necessary expenses of the debtor.* The Debtor's schedules reflect that the Debtor is not living a luxurious lifestyle under the protection of the Bankruptcy Code. It fact, other than the "alimony, maintenance or support paid to others" expense over which the Debtor has little control, the other expenses are reasonable for a single man in similar circumstances. In fact, the Debtor's $425 per month rent appears to be very modest for Jefferson County, Alabama. Considering that the Debtor has two children, $50 per month for recreation activities is not excessive. And the Debtor's own $25 per month recreation expense is reasonable.[27]

(7) *The types of assets the debtor owns and/or for which he is paying.* In this case, the Debtor has very few assets: basically he has his clothing, some furniture, furnishings, and a five year old vehicle. This factor does not weigh against the Debtor because his assets do not reflect an attempt to shelter or retain a luxurious automobile, expensive jewelry, a voluminous number of firearms, valuable or expensive antiques, or other such items one might possess.

Considering all of the above factors, this Court concludes the contributions to the Retirement System are essential for the Debtor to keep his job and thus are "reasonably necessary" and should not be included as part of the Debtor's disposable income. *See 8 Collier on Bankruptcy* ¶ 1325.08[4][b][i] (15th ed. rev.1999) ("[E]xpenses over which the debtor has no control, or which are necessary to the debtor's employment, are undoubtedly 'reasonably necessary.'")

## II. Clothing Exemption

■ The Debtor claims a $2,000 exemption for "wearing apparel" on Schedule B. Alabama law provides that "all necessary and proper wearing apparel" shall be exempt "from levy and sale under execution or other process for the collection of debts." Ala.Code § 6–10–6 (1998). Mr. Tibbs testified that the exemption claim for clothing was because his employment as an assistant principal requires that he must wear "dress clothes" to work. The court understands that an assistant principal wearing Bermuda shorts and sandals to work would probably command less respect than one dressed in business attire. Additionally, school teachers and administrators generally serve as role models for the students they encounter and this Court does not wish to frustrate an already difficult task. Without any further testimony to contradict either the Debtor's evaluation of his apparel, or details which would demonstrate that the Debtor's clothing is more

---

**27.** A modest amount of recreational activities and reading materials is reasonably necessary. "While a whole stream of periodicals is one thing, a reasonable amount is necessary for an informed public. The same is true for a reasonable amount for family recreation; not Broadway shows, but something to benefit the family." *In re Riegodedios,* 146 B.R. 691, 693 (Bankr.E.D.Va.1992).

than is reasonable necessary, this Court finds that the clothing exemption of $2,000 is not inappropriate.

### III.   Summary

Thus having found the contributions to the Retirement System in Section (A) to be a reasonably necessary expense under 11 U.S.C. § 1325(b) and the Wearing Apparel Exemption in Section (B) to be appropriate, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the objection to confirmation by the Chapter 13 Trustee is **OVERRULED** and the objection to claim of exemption is also **OVERRULED** and the Chapter 13 plan as proposed by Mr. Robert Tibbs is **CONFIRMED.**  The office of the Bankruptcy Clerk is directed to enter and Order of Confirmation consistent with the Bench Sheet in this case.