In re Rodney BELL, Debtor.

No. 00–33257.

United States Bankruptcy Court,
S.D. Illinois.

July 5, 2001.

James W. McRoberts, Chapter 13 Trustee, Ron Buch, Attorney for Chapter 13 Trustee, Belleville, IL, for plaintiff.

William A. Mueller, Belleville, IL, for defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

At issue in this case is whether the debtor may continue payments on a 401K loan through paycheck deductions during his Chapter 13 case or whether this violates the "disposable income" requirement for confirmation of his Chapter 13 plan. *See* 11 U.S.C. § 1325(b)(1).

The trustee objects to confirmation of the debtor's plan, arguing that 401K loan expenditures are *per se* not reasonably necessary for the support or maintenance of a debtor or the debtor's dependents and, thus, constitute disposable income that must be paid to creditors during a Chapter 13 case. *See* 11 U.S.C. § 1325(b)(2). The debtor, however, urges the Court to adopt a more flexible rule that would require determination of the reasonableness of a proposed repayment of 401K loans on a case-by-case basis. Specifically, the debtor seeks a determination that, based on the facts of this case, his proposed 401K loan payments are reasonably necessary and do not constitute disposable income.

The debtor is an employee of the U.S. Postal Service and contributes a portion of his earnings to the Federal Retirement Thrift Savings Plan ("TSP" or "401K plan").[1] Approximately one year prior to his bankruptcy filing, the debtor obtained a $4,000 loan from his 401K plan. Half the money was used to catch up expenses of the debtor for utilities and missed car payments, while the remainder was used to purchase a computer and a desk. Since

---

1. The facts are undisputed.

the time of the loan, the debtor has had paycheck deductions averaging $370.50 monthly for repayment of the 401K loan.[2]

The debtor filed his Chapter 13 case on November 7, 2000. Although the debtor's schedule I does not indicate any payroll deductions for 401K loan repayments or contributions, the trustee asserts that the debtor's pay stubs show monthly income of $3,516.90, resulting in a surplus of $2,241.90 after expenses. Accordingly, the trustee contends, the debtor's plan payments must increase from $1,480.00 to $2,142.00[3] per month to qualify for confirmation under § 1325(b)(1).[4]

Section 1325(b)(1), at issue in this case, provides in pertinent part:

(b)(1) If the trustee ... objects to confirmation of [a debtor's] plan, then the Court may not approve the plan unless

. . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(B). Section 1325(b)(2) defines "disposable income," stating:

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and *which is not reasonably necessary to be expended* —

(A) *for the maintenance or support of the debtor or a dependent of the debtor* [.]

11 U.S.C. § 1325(b)(2) (emphasis added).

This Court has not previously considered whether repayment of a debtor's 401K loan in Chapter 13 violates the "disposable income" requirement of § 1325(b)(1). There is, however, ample case law from other courts addressing this issue. The vast majority conclude that a debtor may not repay pension loans or make pension contributions while paying only a portion of creditors' claims in a Chapter 13 proceeding.[5] *See, e.g., In re Harshbarger,* 66 F.3d 775, 777 (6th Cir. 1995); *In re Anes,* 195 F.3d 177, 180–81 (3d Cir.1999); *In re Estes,* 254 B.R. 261, 264 (Bankr.D.Idaho 2000); *In re Hansen,* 244 B.R. 799, 802 (Bankr.N.D.Ill.2000). These courts recognize that repaying a pension loan is essentially repaying oneself. *See Estes,* 254 B.R. at 265. Thus, to allow pension loan payments while unsecured creditors are receiving less than full payment on their claims seems inherently unfair. In addition, such a result would encourage debtors contemplating bankruptcy to take out pension loans knowing their future income will be shielded from creditors. *See id.; In re Padro,* 252 B.R. 809, 812 (Bankr.M.D.Fla.2000); *In re Jones,* 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991).

Courts adopting this majority view generally distinguish between whether a debtor's loan payments can be characterized as

---

**2.** The debtor has an additional deduction from his paycheck of $140.83 monthly, which represents the debtor's contribution to his 401K account.

**3.** This district allows a $100 cushion between the debtor's surplus income after expenses and the amount necessary to fund a plan.

**4.** At the time of filing, approximately 24 months remained for repayment of the 401K

loan. The debtor has proposed a Chapter 13 plan that extends for 60 months. *See* 11 U.S.C. § 1322(d).

**5.** The Second, Third, and Sixth Circuit Courts of Appeal have considered the issue of pension contributions and/or loan repayments in Chapter 13. The Seventh Circuit Court of Appeals has not ruled on the issue.

"voluntary" or "mandatory." *See In re Delnero*, 191 B.R. 539, 542 (Bankr. N.D.N.Y.1996); *In re Cavanaugh*, 175 B.R. 369, 372–73 (Bankr.D.Idaho 1994). They reason that if the debtor could cease making payments without affecting his employment status, the payments are voluntary and not reasonably necessary for the debtor's support. However, if the debtor must repay the pension loan as a condition of retaining his employment, the payments are mandatory and must be continued to enable the debtor to earn income for the support of himself and his dependents. *Cf. In re Davis*, 241 B.R. 704, 709–10 (Bankr. D.Mont.1999); *In re Tibbs*, 242 B.R. 511, 517–18 (Bankr.N.D.Ala.1999).[6] Only in the latter instance are the payments considered necessary for the debtor's support and, thus, excluded from disposable income that must be paid to creditors. *See In re Johnson*, 241 B.R. 394, 401–02 (Bankr.E.D.Tex.1999).

Despite the attractiveness of this seemingly straightforward rule, the distinction between "voluntary" and "mandatory" loan payments is difficult to apply objectively and amounts, in most instances, to a *per se* prohibition against allowing the repayment of a debtor's pension loans in Chapter 13 cases. *See, e.g., In re Helms*, 262 B.R. 136, 141 & n. 1 (Bankr.M.D.Fla.2001); *In re Johnson*, 241 B.R. at 401–02; *In re Nation*, 236 B.R. 150, 153 (Bankr.S.D.N.Y.

1999). In *Nation*, for example, the court found the debtor's pension contributions and loan repayments to be "mandatory" in that they were required by applicable regulations and deducted from the debtor's paycheck irrespective of the debtor's wishes. 236 B.R. at 153. Even so, the court concluded, "it is by no means clear" that the contributions and repayments are mandatory in "any material, consequential sense." *Id.* Noting that "without material consequences for noncompliance, 'mandatory' is simply a label without effect," *id.* at 153 n. 4, the *Nation* court ultimately applied a preemption analysis to rule that even payments that were "mandatory" in the sense of being required for the debtor's continued employment must be included in disposable income. *Id.*, at 153–55. *But see In re Taylor*, 243 F.3d 124 (2d Cir.2001).[7]

In the present case, as in *Nation*, it is not entirely clear whether the debtor's loan repayments are "voluntary" or "mandatory." The provisions of the debtor's TSP loan program explicitly forbid the suspension of any payments during the repayment period on a loan. *See* "Paying Back a Loan," Sec. IV, p. 12, TSP Loan Program booklet (April 1997), submitted May 29, 2001.[8] In addition, the loan program requires that payments be made "through payroll allotments" and specifies that "personal checks *cannot* be accepted

---

6. *Davis* and *Tibbs* can be distinguished from the present case in that both involved pension contributions, rather than loan repayments. As noted in *Anes*, however, a debtor's repayment of funds borrowed from a pension plan is nothing more than "reestablishing" savings that originally occurred during the course of the debtor's employment. *See* 195 F.3d at 180. Thus, the same rationale can be applied regarding loan repayments as for pension contributions.

7. In *Taylor*, the Second Circuit Court of Appeals declined to adopt the strict rule of *Nation*, opting for "a more flexible solution" that

would allow exercise of the bankruptcy court's discretion in each case. *See* 243 F.3d 124, 129.

8. This section, written in question-and-answer form, responds to the question "Can I suspend my loan payments?" with the following language:

No, you *cannot* suspend your loan payments. Before a loan is issued, you must sign your Loan Agreement/Promissory Note and an authorization for payroll allotments. (Emphasis in original).

as payment on [a] loan." *See id.,* p. 11 (emphasis in original). The program further provides that if a borrower goes into "nonpay" status or leaves federal service, he must repay the loan in full within an established time. Failure to repay the loan will result in a taxable distribution being declared and reported to the Internal Revenue Service ("IRS"). *See id.,* p. 16; *see also* Sec. V. "Taxable Loan Distributions," p. 17.

An examination of these provisions shows that the debtor's loan program does not make repayment of his 401K loan a condition of employment such that failure to repay will result in termination. However, because the debtor's payments are automatically deducted from his paycheck so long as he continues in his present employment, the only way the debtor can discontinue the payments is to terminate his employment or go into nonpay status. These options are neither appropriate nor feasible for a Chapter 13 debtor. Thus, it would appear that the debtor's loan payments are "mandatory" in this sense at least.

■ This sense of "mandatory," however, is not sufficient to render the debtor's loan payments "reasonably necessary for support" under the "mandatory/voluntary" distinction of the majority line of cases. Rather, those cases require that repayment be an express condition of the debtor's continued employment. Here, by contrast, the only consequence resulting from cessation of the debtor's loan payments is that a taxable distribution is declared and reported to the IRS.[9] While the debtor's loan program appears to preclude the debtor from suspending payments on the loan without terminating his employment, the only consequence of halting such payments is liability for tax penalties, not loss of employment.

As can be seen, the "mandatory/voluntary" distinction used to determine whether a debtor's 401K loan payments constitute "disposable income" is inherently ambiguous and arbitrary in its application. In addition, it is subject to misuse by courts who would render decisions grounded strictly on policy while ostensibly following a "bright-line" or objective test. However, the greatest problem with this test is that it gives short shrift to the statutory language defining "disposable income."

■ Section 1325(b)(2) imposes a duty on the bankruptcy court to decide what expenses are "reasonably necessary" for the maintenance or support of the debtor or a dependent of the debtor. To fulfill this duty, the court must look at each debtor's particular situation in order to balance the equities presented and weigh the competing interests of the debtor and unsecured creditors.[10] This necessarily requires a case-by-case analysis of the overall circumstances confronting the debtor and consideration of any factors properly before the court concerning the debtor's proposed repayment of a 401K loan and treatment of creditors. *See In re Taylor,* 243 F.3d 124, 129–30 (2d Cir. 2001). Among the relevant factors are: (a) the age of the debtor and the amount of time until expected retirement, (b) the amount deducted monthly for the loan re-

9. It is well-settled that adverse tax consequences resulting from a debtor's failure to repay a 401K loan do not rise to the level of necessity justifying repayment of the loan to the detriment of creditors. *See Helms,* 262 B.R. at 141 n. 1; *In re Padro,* 252 B.R. at 811–12.

10. The disposable income test is designed to balance the interest of creditors with the interest of the debtor in obtaining a fresh start. *See In re Esquivel,* 239 B.R. 146, 149 (Bankr. E.D.Mich.1999).

payment and the total amount the debtor will have to pay back if the monthly payments are discontinued, (c) the likelihood that this pay-back amount will jeopardize the debtor's fresh start, (d) the number and nature of the debtor's dependents, (e) the likelihood the debtor will suffer adverse employment conditions if the loan payments are discontinued, (f) the debtor's yearly income and overall budget, and (g) any other constraints on the debtor that make it likely the pension loan repayment is a reasonably necessary expense for that debtor. *See Taylor*, 243 F.3d at 129–30.[11] Other factors this Court would consider include, *inter alia:* (a) the purpose of the loan, (b) what the proceeds were used for, (c) when the loan was taken out, *i.e.*, how long before bankruptcy, (d) whether any proceeds of the loan are left, (e) how much of the repayment period remains, and (f) the effect of the debtor's proposed repayment of the loan on creditors in his Chapter 13 case.[12] Administrative inconvenience in altering the loan repayment procedure, however, is not a factor bearing on whether pension loan payments should be continued in Chapter 13, *see id.*, at 130, nor is the possibility that the debtor may suffer adverse tax consequences for failure to repay the 401K loan. *Padro*, 252 B.R. at 811–12.

 Because a debtor's repayment of a pension loan is essentially replenishing funds that had been set aside as savings in a tax-favored account, any proposed repayment must be subjected to intense scrutiny. Unless the debtor has withdrawn more than his vested amount in the plan, in which case a debtor-creditor relationship would have been created with other participants in the plan, the funds "borrowed" by the debtor are funds the plan administrator has been holding for the debtor's benefit all along. *See Johnson,* 241 B.R. at 401. This fact makes the proposed repayment of a pension loan different from repayment of a home mortgage or home equity loan that is routinely and legitimately approved in Chapter 13. While it is true the debtor's payment in each instance results in an increase of assets that may be exempted from creditors, repayment of a mortgage loan is a return of money borrowed from a third-party source, while a pension loan repayment is a return of money to oneself. *Id.*

In the present case, the debtor requests the Court, if it should decide his loan payments constitute disposable income, to allow a budget item to offset his anticipated tax liability. The Court declines to make this determination at this time. Rather, the Court finds that the debtor, in light of the Court's opinion in this matter, should be afforded an opportunity to present evidence bearing on whether his repayment of his 401K loan is "reasonably necessary." The Court will, accordingly, reserve ruling on the trustee's objection to confirmation of the debtor's Chapter 13 plan and set this matter for an evidentiary hearing. The debtor's argument concerning the potential tax liability will be considered at that time.

SEE WRITTEN ORDER.

---

11. This list of factors is nearly identical to that set forth in *Taylor*. However, the *Taylor* court was concerned with pension contributions only and did not refer to pension loan repayments.

12. While consideration of these factors would seem to implicate the debtor's good faith in incurring the loan initially, "good faith" is a separate basis for confirmation of a Chapter 13 plan, *see* 11 U.S.C. § 1325(a)(3), and is not a deciding factor in determining whether a debtor's proposed repayment of a 401K loan is "reasonably necessary" under § 1325(b). *See Helms*, 262 B.R. at 142.