**In re Guillermo L. MENDOZA, III and Darlene Y. Castillo, Debtors.**

**No. 01–02194–TUC–EWH.**

United States Bankruptcy Court,
D. Arizona.

Feb. 22, 2002.

———

Ronald Ryan, Tucson, AZ, for Debtors.

Dianne Kerns, Tucson, AZ, Office of the Chapter 13 Trustee.

## MEMORANDUM DECISION

EILEEN W. HOLLOWELL,
Bankruptcy Judge.

### INTRODUCTION

Pending before the court is the Chapter 13 [1] Trustee's (Trustee) objection to the Chapter 13 plan (Plan) proposed by Darlene Y. Castillo (Castillo) and Guillermo L. Mendoza (Mendoza) (collectively the Debtors). The Plan does not pay the unsecured creditors in full but permits the Debtors's to continue to make contributions to their respective pension plans. The Trustee asserts that because monthly retirement plan contributions are not reasonably necessary for the Debtors' maintenance and support, the Plan cannot satisfy the disposable income requirements of § 1325(b)(2)(A). [2] For the reasons set forth below, the court finds that, except when the failure to make a retirement contribution will result in an actual adverse consequence such as loss of employment, retirement contributions must be included in the calculation of disposable income. Retirement contributions are not, however, fatal to plan confirmation if a debtor elects to extend the plan term by a sufficient number of months to assure that creditors are paid as much as they would receive under a 36 month plan in which retirement contributions are included in the calculation of disposable income.

### FACTS

Castillo's $90.09 monthly retirement contributions are voluntary and represent about 5% of her annual income. Mendoza works for the City of Tucson and testified that his $160.33 monthly contribution, which represents 3% of his annual income, is a mandatory deduction from his pay. Mendoza submitted copies of Tucson City Code § 22–35(a)(1) which requires that all "covered" employees become contributing members of the Tucson Supplemental Retirement System (Tucson System). Section 22–35(a)(5) prohibits an employee from terminating membership "while continuing to be employed in a covered position". Section 22–35(a)(6) provides that certain categories of employees are excluded from the Tucson System as are certain appointed officers and "unclassified" employees under § 22–35(a)(2). No evidence was presented that Mendoza's employment would be terminated if he quit making contributions to the Tucson System during the Plan's term.

### DISCUSSION

A. *Retirement Contributions Are Not Reasonably Necessary for the Maintenance and Support of the Debtors.*

■ While "disposable income" is defined as being what is "reasonably necessary for the maintenance and support of the debtor or the dependents of the debtor," the Code does not define the term "reasonably necessary". As Judge Lundin has noted:

> What expenses are "reasonably necessary..." is a fact question determined in the context of individual debtors and their dependents. "On similar facts, outcomes will vary from judge to judge,

---

**1.** Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**2.** § 1325(b)(2)(A) provides in relevant part:

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
(A) for the maintenance or support of the debtor or a dependent of the debtor...

jurisdiction to jurisdiction, from one part of the country to another and even over time within the same jurisdiction". Lundin, Keith M., *Chapter 13 Bankruptcy* Vol. 2 § 165.1 (3rd ed.2000).

Not surprisingly, there is a split of authority on whether retirement contributions are reasonably necessary expenses which may be excluded from the calculation of a Chapter 13 debtor's disposable income. A majority of courts have followed the so called "per se rule," which holds that, as a matter of law, voluntary retirement contributions must be included in disposable income. *In re Merrill,* 255 B.R. 320 (Bankr.D.Or.2000); *In re Feldmann,* 220 B.R. 138, 145 (Bankr.D.Ga. 1998); *In re Moore,* 188 B.R. 671, 675 (Bankr.D.Idaho 1995); *In re Cavanaugh,* 175 B.R. 369 (Bankr.D.Idaho 1994).

In adopting the "per se rule", the *Merrill* court stated:

Contribution to the Profit Sharing Plan while desirable from the Debtor's standpoint, is not an expenditure which is reasonable necessary for his maintenance and support. The Debtor is not allowed to acquire financial security for the future at the expense of is unsecured creditors. 255 B.R. at 324.

A number of courts, however, have adopted a different rule when the retirement contribution is required by the employer, reasoning that expenses over which a debtor has no control, or which are necessary for a debtor's employment, are "reasonably necessary" for a debtor's support. *In re Davis,* 241 B.R. 704, 707 (Bankr.D.Mont.1999); *In re Tibbs,* 242 B.R. 511, 512, (Bankr.N.D.Ala.1999). Other courts have, refused to exclude mandatory contributions from disposable income. *In re Nation,* 236 B.R. 150, (Bankr.S.D.N.Y.1999) (Mandatory payroll deductions for pension contributions and repayment of pension loans are projected disposable income, supremacy clause supports order that pension contributions and loan repayments cease during a Chapter 13 case); *In re Jaiyesimi,* 236 B.R. 145 (Bankr.S.D.N.Y.1999).

A minority, but growing number of courts, have held that the determination of whether retirement contributions are reasonably necessary for the support of debtors and their dependents should be determined on a case by case basis, under a totality of the debtor's circumstances standard. *In re New York City Employees' Retirement Sys. v, Sapir (In re Taylor),* 243 F.3d 124 (2nd Cir.2001); *In re Mills,* 246 B.R. 395 (Bankr.S.D.Cal.2000); *In re Bell,* 264 B.R. 512 (Bankr.S.D.Ill.2001).

In *Taylor* the Second Circuit Court of Appeals effectively over ruled *Nation* and refused to adopt a bright line rule based on whether a contribution was mandatory or voluntary. Instead *Taylor* holds that it is within the discretion of the bankruptcy court based "on the facts of each individual case" to determine if retirement contributions are a reasonably necessary expense. The *Taylor* court provided a list of non exclusive factors for bankruptcy courts to consider in deciding whether a retirement contribution should be excluded from disposable income including the debtor's age, time to retirement, amount of the contribution and any adverse consequences suffered by the debtor as a result of a failure to make contributions such as buy back requirements. 243 F.3d at 129–30.

Using the *Taylor* approach requires that courts conduct an analysis of the facts of each individual case. *In re Guild,* 269 B.R. 470, 474 (Bankr.D.Mass.2001). ("Equity is best served by a complete review of the facts of each case"). However, the case by case approach of *Taylor* is potentially difficult to apply and may lead to disparate results even before the same judge. Should 50 year old debtors be

permitted to make contributions but not debtors who are 45? How much of a contribution should be permitted? Should the right to make a contribution be determined by the harshness of particular plan's buy back terms? Mandatory plans may often present more administrative problems for debtors and their retirement plans thereby making it more likely that mandatory contributions will be allowed under the case by case approach. See *Davis,* 241 B.R. at 709 (if the deductions were not permitted, the shortfall in the pension trust fund could affect "innocent beneficiaries and the debtor's employer").

It seems, however, unfair that a debtor's ability to set something aside for old age should depend on whether the retirement plan offered by the employer is mandatory or voluntary. As one court has noted, the distinction between "voluntary" and "mandatory" payments is "inherently ambiguous and arbitrary in its application". *Bell,* 264 B.R. at 516.[3]

Furthermore, even if a debtor's retirement plan is "mandatory" the effect of excluding the contribution from disposable income is the same—the debtor is investing in his or her future financial security at the expense of the creditors. Therefore, except in those instances where a debtor can demonstrate that a failure to make a retirement contribution will result in an actual adverse consequence to their support and maintenance, such as loss of employment, the court concludes that retirement contributions are not reasonably necessary for a debtor's support and should be included in the calculation of disposable income.

■ In this case, Mendoza has submitted Tucson City Code provisions which require membership in and prohibit termination from the Tucson System. Mendoza's evidence is unclear, however, about what consequences he may suffer if the Chapter 13 confirmation order requires him to include his monthly retirement contributions in the calculation of his disposable income. The court notes the Tucson City Code provides for exceptions to membership and it is, therefore, possible to be employed by the City of Tucson and not be a contributing member of the Tucson System. See Section 22–35(a)(2) and (a)(6). Mendoza has not submitted any evidence which demonstrates that he will suffer an actual adverse consequence if he suspends contributions to the Tucson System for the term of his Chapter 13 Plan. Accordingly, Mendoza may not exclude his contributions to the Tucson System from the calculation of the Debtors' disposable income.

B. *The Debtors May Continue to Make Retirement Contributions if They Extend the Plan's Term.*

■ The court's decision does not, however, preclude the Debtors from making

---

**3.** *Bell* was a case involving a pension loan repayment. The *Bell* court, following *In re Anes,* 195 F.3d 177 (3rd Cir.1999), held that there is no real distinction between a pension loan payment and a pension contribution because paying the loan is simply "reestablishing savings that occurred during a debtor's employment". However, this court notes one potentially significant difference between pension loan repayments and pension contributions in terms of the impact on the unsecured creditors. If a pension loan is not repaid it will trigger a tax liability for the debtor which will be entitled to a priority payment which may result in unsecured creditors receiving less of a distribution than if the debtor were permitted to continue to pay the loan. In the retirement contribution situation the creditors will receive the benefit of including the contribution amounts in the calculation of the debtor's disposable income. However, the questions of whether pension loan repayments should be excluded from disposable income is not before the court and is not resolved by this decision.

their retirement contributions. A number of courts have held that the disposable income test can be satisfied by a plan that pays less than all of a debtor's disposable income for a period longer than the three years required by § 1325(b). See, *In re Gonzales,* 157 B.R. 604 (Bankr.E.D.Mich. 1993); *In re Walsh,* 224 B.R. 231 (Bankr. M.D.Ga.1998); *In re Elrod,* 270 B.R. 258, (Bankr.E.D.Tenn.2001). As the *Gonzales* court explained:

> The only value judgment necessary in deciding whether a plan exceeding three years satisfies the disposable income test where a similar three year plan would not is in determining how much of the disputed amount is disposable income. The analysis is strictly mathematical thereafter. After the court determines the extent to which the Debtor's budget exceeds what the court deems to be a reasonable amount, it adds that amount to the monthly payment proposed by the debtor in the plan. It then multiplies that result by 36 ....the result represents the total amount that the debtor would have to pay under a three year plan in order to satisfy § 1325(b)(1)(B). Next, the court computes the total amount to be paid by the debtor pursuant to the extended plan. It then compares that amount with the three year minimum payment, adjusted to include the interest that those payments would have earned during the extension period. 157 B.R. at 613.

The Debtors pay approximately $270 a month to their retirement plans. Their contributions are made with "pre-tax" dollars. If the contributions are suspended

during the 36 month mandatory plan term the creditors will not receive an additional $270 a month but the after tax amount, which for purposes of example only, the court will assume to be $200. If the hypothetical $200 a month is included in the calculation of disposable income the Debtor's total plan payments over the 36 month term are increased by $7920 ( the Increased Payment).[4] In addition, the creditors are entitled to simple interest on the Increased Payment to compensate for the delay in payment. *Elrod,* 270 B.R. at 261. For purposes of this example the court has set the interest rate at 2% which is slightly higher than what banks are currently paying on money market accounts. When the interest is added, the total amount of the Increased Payment is $8078.40. The Debtors monthly plan payment is $1150. Under the court's hypothetical the Debtors may choose to extend the Plan's term by slightly more than seven months ($8078.40 / 1150 = 7) and continue to make their retirement contributions or they can limit the Plan's term to 36 months and pay their creditors their entire disposable income. As noted by the court in *Walsh* providing the Debtors with such a choice:

> "[D]oes not retreat from the policy of the Code that a debtor should be permitted to receive the benefit of a Chapter 13 discharge if he or she devotes all disposable income into plan payments for a period of 36 months. This decision articulates the reasons why a debtor might voluntarily seek to extend payments beyond 36 months and why such a request might be approved by the court." 224 B.R. at 238.[5]

---

**4.** The Increased Payment is calculated by multiplying $200 by 36 and then adding the Chapter 13 Trustee's 10% fee.

**5.** Several courts have refused to permit plan term extensions on the grounds that debtors

might propose a longer plan term, then dismiss their cases once pension plan loans are repaid. See e.g. *In re Gilliam,* 227 B.R. 849 (Bankr.S.D.Ind.1998); *In re Fulton,* 211 B.R. 247 (Bankr.S.D.Ohio 1997). This case does not involve a loan, but even if it did, a careful

## CONCLUSION

Based on the foregoing, the court will enter a separate order sustaining the Trustee's objection. The Debtors have 30 days from the date of this decision to amend the Plan to provide for full payment of their disposable income for 36 months or to extend the Plan term by a sufficient number of months to assure that creditors are paid as much as they would receive under a 36 month plan in which the Debtors contribute all of their disposable income to their Plan payment.

review of a debtor's plan by the Trustee and the court should prevent such abuses since proposing to pay off pension loans ahead of unsecured creditors calls the debtor's good faith into question.